# Young *v.* Arntze & Bros.

*Action for Breach of Special Contract.*

1. *Amendment of complaint; demurrer, and motion to strike out.*—The complaint containing the common money counts, and a defective special count claiming damages for the breach of a contract to deliver lumber in payment for machinery; the common counts having been struck out on motion, on the ground of a misjoinder, and a new count added by amendment, alleging performance of the special contract by plaintiff, and a breach thereof by defendants, and claiming damages in money for the breach; a motion to strike out the amended count is not the proper mode of reaching the defects in the original special count, but a demurrer to it should be interposed.

2. *Evidence relevant to rescission of contract, or right to rescind.*—In an action for the breach of a contract to deliver lumber in payment for machinery sold by plaintiffs to defendants for use in their saw-mill, the defendants claiming a rescission of the contract on account of misrepresentations as to the quality and capacity of the machinery; the right of rescission depends on the facts attending the sale---that is, the existence or non-existence of fraud, or misrepresentations constituting fraud; and evidence as to the motives or reasons of the purchaser in electing to rescind is not relevant or admissible, as the failure to construct a side-track on the railroad near his mill, whereby the delivery of lumber would be facilitated.

3. *Offer to rescind, and waiver of right; evidence relevant to.*—As against defendants' right and offer to rescind, plaintiff having proved their use of the machinery subsequent to the alleged offer, it is compe-

[Young v. Arntze & Bros.]

tent for the defendants to prove, in rebuttal, that this was done by arrangement with a third person, to whom plaintiff had proposed to sell, and who had informed defendants of the negotiations between them.

4. *Fraud in sale of machinery; rights and remedies of purchaser.*—On a sale of machinery, a misrepresentation of a material fact by the vendor, on which the purchaser has a right to rely, and does rely, as an inducement to make the contract, is a fraud, for which the purchaser may, at his election, either rescind the sale, or retain the machinery, and claim an abatement of the purchase-money.

5. *Rescission for fraud.*—If the purchaser elects to rescind, he must exercise the right within a reasonable time after the discovery of the fraud, or the time when it ought to have been discovered; and must place the vendor *in statuo quo*, by returning the machinery to him at the place where it was delivered, unless there is an acceptance at some other place.

6. *Abatement of purchase-money.*—If the purchaser elects not to rescind, he may claim an abatement of the purchase-money, while retaining the machinery; but, if it is of any value whatever, though not adapted for the particular use intended, he can not avoid entirely the payment of the purchase-money.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

This action was brought by George Arntze & Brothers, suing as partners, against W. J. Young, Henry T. Bracken, and Martin L. Bracken; and was commenced on the 8th July, 1885. The original complaint contained four counts, the 2d, 3d and 4th being the common counts, on account, on account stated, and for goods sold and delivered; and the 1st a special count, in substance as follows: Plaintiffs claim of defendants $1,120 due from them on or about January 15th, 1885, and plaintiffs aver that, on the 9th February, 1884, they entered into a contract with defendants jointly and severally, in substance, to-wit: plaintiffs sold to defendants the following mill machinery used for a saw-mill (describing it), which was to be delivered by plaintiffs on cars at Decatur, so soon as defendants could arrange to receive the same, and the condition of the roads would permit; and in consideration of said property so purchased from plaintiffs, defendants bound themselves jointly and severally to pay to plaintiffs 140,000 feet of good merchantable lumber, white oak, ash and poplar, of the dimensions set out in said contract, to be sawed and put on side-track at Flint Bridge in Morgan county; one half within eleven months from said 9th February, 1884, and the other half within eleven months after January 15th, 1885, which said last amount is not yet due; and plaintiffs aver that said 70,000 feet of lumber, which, as per said contract, should have been delivered on or about January 15th, 1885, on

[Young v. Arntze & Bros.]

said side-track at Flint Bridge, has not been delivered, and that the value thereof would have been and is $1,120, and plaintiffs claim that said sum of money, the value of said lumber, with interest thereon, is now due.

"On motion," as the judgment-entry recites, "the 2d, 3d and 4th counts of original complaint are stricken out; defendants demurred to the *next* count in original complaint, which was sustained by the court; and on motion to strike amended complaint from the file, the court overruled, and the defendant excepted." A demurrer is copied into the transcript, both to the entire complaint, on the ground of a misjoinder of counts; and to the special count, because it does not allege performance by plaintiffs, or an excuse for the failure to perform. The amended count alleges the making of the contract between the parties, performance by the plaintiffs, a breach and failure to perform by defendants, and claims $1120 as damages for the breach; and it is in all respects formal. The bill of exceptions states that the defendants moved to strike the amended count, or "amendment of the complaint," from the files, "because the same was a departure from, and inconsistent with the several counts in the original complaint." The defendants then pleaded (1) the general issue, (2) want of consideration, (3) failure of consideration, (4) fraud, (5) breach of warranty, (6) recoupment, and (7) rescission of contract; and issue was joined on these several pleas.

On the trial, as the bill of exceptions states, the plaintiffs offered in evidence the contract for the sale of the machinery, and proved the delivery of the machinery to the defendants, their failure to deliver the lumber stipulated to be delivered, and its value at the time and place specified for its delivery. The contract is said to have been in writing, and under seal, but it is not set out in the record. The plaintiffs having closed, the defendants offered evidence tending to show that they bought the machinery for use in their saw-mill, and so informed the plaintiffs pending the negotiations between them; "that plaintiffs, pending such negotiations, represented that the boilers were good, would make all the steam defendants would want, and were all right in every way;" that they (defendants) used the boilers and machinery for several months in attempting to run their saw-mill, but failed to do so in consequence of defects of construction, "which could not be remedied except at a cost equal to their value;" that they then notified plaintiffs "that the boilers had been

misrepresented to them, that they never expected to fire them up again, and that they (plaintiffs) could take them back;" also, "that they then abandoned the use of all the machinery, and never afterwards used any of it, except, perhaps, some head-blocks and track-irons; that they did saw up some stocks after giving said notice to plaintiffs, but this was done pursuant to an arrangement with other parties, who were negotiating with plaintiffs for the purchase of the machinery, and after notice that ' they had purchased the same;" also, "that the defects in the boilers were not open to ordinary observation, but could only be ascertained by actual experiment." As to the sale or attempted sale of the machinery by plaintiffs to third persons, Patterson and his associates, defendants adduced evidence tending to show that, after notice given by them as to the abandonment of the machinery, "plaintiffs proposed to sell to said Patterson and associates, and agreed upon the terms of sale and payment, but the sale was never carried into effect;" while the plaintiffs' evidence tended to show that the proposal to sell to Patterson and his associates "was made by and with the consent of the defendants." Patterson, being examined as a witness for the defendants, "testified as to the negotiations with plaintiffs for the purchase of said machinery, and that he thereupon notified Dr. Young (one of the defendants) that they had purchased said machinery." The plaintiffs objected to this statement by the witness, and the court sustained the objection; to which defendants excepted.

"The evidence on the part of the plaintiffs, in rebuttal of the defendants' evidence, was in conflict on every material point. The proof showed that the defendants' mill was located a mile from any depot, and on the railroad on Flint Creek, near outside track near where said mill was located. On cross-examination of said Young, one of the defendants, plaintiff asked him, if a side-track had been put down at Flint Bridge, and if he was not informed, before the offer to rescind, that the railroad company would not build a side-track at said bridge." The plaintiffs objected to this evidence, "as illegal, irrelevant, and immaterial," and the court sustained their objections; to which the defendants excepted. One Ryan, a witness for the plaintiffs, "examined as an expert as to the construction of the defendants' furnace and the size of the smoke-stack, testified that he had seen the furnace in use by defendants, and told them that it was not properly constructed, and that they could not run the

machinery that way. To this statement of said witness, as to what he told defendants," the defendants objected and excepted. The bill of exceptions purports to set out "substantially all the evidence," and contains this statement: "The proof showed that Flint Bridge, near which defendants set up their machinery, was five or six miles south of Decatur, where plaintiffs lived, and from which place the machinery was shipped to the defendants. The defendants did not return, nor offer to return the property to Decatur, other than as above stated, and the same was left by them near Flint Bridge."

On the above evidence, the court gave several charges to the jury on request of the plaintiffs, and refused several charges asked by the defendants; but it is not necessary to set out these charges, since this court does not pass upon their correctness in detail. The charges given, the refusal of the charges asked, the several rulings on evidence, and the overruling of the motion to strike the amended complaint from the files, are now assigned as error.

F. P. WARD, R. W. WALKER, and E. W. GODBEY, for the appellants.

S. T. WERT, *contra.*

SOMERVILLE, J.—The allowance by the court of the amendment to the complaint was free from error. Upon the sustaining of the demurrer to the original complaint, based on the misjoinder of counts, all the counts except the first were stricken out, in order to conform to the ruling of the court on the demurrer. The new count, added by way of amendment, was for an alleged breach of the contract sued on; and so was the first count, although its averments may have been informal and defective. These defects, if any, should have been taken advantage of by demurrer, not by motion to strike, which was properly overruled.

The Circuit Court, in our judgment, erred, however, in one or more of its rulings on the evidence, the effect of which must necessarily operate to reverse the judgment. It was immaterial to any of the issues in the case, that no side-track had been constructed on the railroad at Flint Bridge, where the machinery in question was situated, and that the defendant Young had been informed that it would not be constructed prior to his offer, in behalf of the defendants, to

rescind the contract of purchase, on the ground of alleged fraudulent representations by the plaintiffs at the time of the sale. The right to rescind depended upon the facts attending the sale—the existence or non-existence of fraud —not on the mere motive of the purchasers in electing to assert such right.

The court also erred in excluding the testimony of the witness Patterson, as to his negotiations with the plaintiffs for a purchase of the machinery after the alleged rescission of the sale by the defendants, and of the fact that the witness notified the defendant Young of this action on the plaintiffs' part. The first portion of this evidence tended to show a consent on the plaintiffs' part to the rescission, and a waiver of the defendants' duty to return the machinery to Decatur, where the sale and delivery were made. The notice to Young was material as tending to explain his conduct in using some of the machinery after the rescission, by Patterson's consent. If Young had reason to believe, and did believe, that Patterson had bought the machinery after he offered to return it, his continued use of it by Patterson's consent would not operate to prejudice his rights against the original vendors, the plaintiffs.

What the witness Ryan told defendants, as to his opinion in reference to the alleged improper construction of the furnace, was manifestly irrelevant, and should have been excluded. It was mere hearsay within the strictest signification of the term.

The following principles will probably be a sufficient guide upon another trial:

If the plaintiffs, in making the sale of the machinery to defendants, misrepresented any material *fact* on which the defendants, as purchasers, had a right to rely, and did in fact rely, as an inducement to the trade, this would be a fraud in the sale.

If such fraudulent misrepresentation was made, the defendants would have their election to retain the goods and abate the purchase-money by proving the fraud in reduction of damages; or they could, within their option, rescind the sale.

If they elected to rescind, they must have exercised the right within a reasonable time—i. e., with due promptitude from the time the fraud was discovered, or ought to have been discovered.

If the right of rescission was exercised, the defendants

were required to place the plaintiffs *in statu quo* by return-ing the goods to them at the place where the trade was con-summated by delivery. But this feature of the rescission could be waived by the plaintiffs giving their assent, clearly and unequivocally, either expressly or by implication, to an acceptance of the goods at any other place. Whether there was such a waiver in this case, in view of the conflicting evidence, was a question for the jury.

If there was no rescission manifested for sufficient cause and with proper diligence, the action could not be defeated entirely, if the facts showed a completed sale of the machinery by the plaintiffs to defendants, and the articles purchased were of any value. If they were of any intrinsic value, whether adapted to the particular use for which they were purchased or not, the payment of the entire purchase-money could not be avoided on the ground of fraud, or breach of warranty.

The other questions raised by the charges have been too often discussed by us for any further consideration. We need only to refer to some of the adjudged cases in support of the foregoing propositions: *Moses v. Katzenberger*, 84 Ala. 95; *Brown v. Freeman*, 79 Ala. 406; *Eagan Co. v. Johnson*, 82 Ala. 233; *Jones v. Anderson, Ib.* 302; *Tabor v. Peters*, 74 Ala. 90; *Jemison v. Woodruff*, 34 Ala. 143; *Davis v. Betz*, 66 Ala. 206; *Sledge v. Scott*, 56 Ala. 202; *Bryant v. Isburgh*, 74 Amer. Dec., *Note*, 657-662; *Johnson v. Evans*, 50 Amer. Dec., *Note*, pp. 674-7.

Reversed and remanded.