## SCOTT v. EMPIRE LAND CO.

(District Court, S. D. Florida. May 21, 1925.)

No. 149.

**I. Equity ⊚═133—Bill must aver facts on which complainant relies for relief.**

A bill in equity must aver facts on which complainant bases his right to relief sought.

**2. Deeds ⊚═188—Bill of complaint, seeking cancellation of deed for fraud, must allege facts.**

Bill of complaint to cancel deed must allege the facts constituting the fraud.

**3. Dismissal and nonsuit ⊚═73 — Allegations of fact only, and not conclusions of pleader, considered as admitted on motion to dismiss bill.**

In suit to cancel deed for fraud, allegations of fact only, and not conclusions of pleader, will be considered as admitted on motion to dismiss.

**4. Contracts ⊚═270(2)—One who desires to rescind for fraud must, on discovery of fraud, announce purpose.**

A party, who desires to rescind a contract for fraud, must, at once on discovery of the fraud, announce his purpose to rescind.

**5. Contracts ⊚═270(2)—Notice of facts sufficient to put ordinary man on inquiry is equivalent to "knowledge of facts."**

Notice of facts or circumstances which would put a man of ordinary intelligence on inquiry is equivalent to "knowledge of facts," within rule that one who desires to rescind contract on ground of fraud must, on discovery thereof, announce purpose to rescind.

**6. Cancellation of instruments ⊚═34(1) — Grantor held barred by laches from suing for cancellation of deed for fraud.**

Grantor, to whom grantee agreed to pay purchase price by delivery to grantor of bonds to be issued, secured by mortgage on land, or by payment of cash out of proceeds of sale of bonds, was barred by laches from bringing suit, more than 20 years after execution of deed, to cancel deed on ground that grantee fraudulently procured conveyance without intending to pay price, where mortgage was executed, and bonds were issued and sold, and proceeds thereof were appropriated by grantee without payment of price to grantor a number of years before commencement of suit, with knowledge of such facts by grantor, since grantor in such case had knowledge of facts from which he should have known grantee's fraudulent intent, and was guilty of laches in not sooner bringing suit, particularly in view of substantial increase in value of land.

**7. Equity ⊚═64—The law serves the vigilant, and not those who sleep over their rights.**

The law serves the vigilant, and not those who sleep over their rights.

**8. Equity ⊚═43—Has no jurisdiction to relieve against fraud, where there is plain, adequate, and complete remedy at law.**

Courts of equity have no jurisdiction to grant relief against fraud, when there is a full, complete, and adequate remedy at law, under Judicial Code, § 267 (Comp. St. § 1244).

**9. Cancellation of instruments ⊚═10—Grantor, to whom grantee failed to pay purchase price, had plain, adequate, and complete remedy at law, precluding suit in equity for cancellation of deed for fraud.**

Grantor, who conveyed land in consideration of grantee's agreement to deliver certain number of bonds to be issued, secured by mortgage on land, or pay specified amount out of proceeds of sale of bonds, had a plain, adequate, and complete remedy at law, within Judicial Code, § 267 (Comp. St. § 1244), on grantee's failure to deliver bonds or pay portion of proceeds of sale thereof, precluding him from suing grantee in equity for cancellation of deed on ground of fraud.

**10. Contracts ⬤═94(6) — Misrepresentations, to constitute "fraud," must concern existing facts, or constitute promises made with no intention or ability to carry them out.**

Misrepresentations, to constitute "fraud," must be concerning present existing facts, and may not be based on mere promises, which are not carried out, or which are falsely made; but such promises, where made with no intention or ability to carry them out, will be considered fraud, against which equity will grant relief.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraud.]

**11. Contracts ⬤═99(3)—Fraudulent intent not to comply with promises must be shown by clear and unquestioned facts.**

Promises, to constitute fraud, on ground that they were made with no intention or ability to carry them out, must be proved by clear and unquestioned facts showing such intention, and equity in such cases will not enter into presumptions or surmises.

**12. Cancellation of instruments ⬤═34(3)—Delay in commencement of suit for cancellation of deed held not justified by grantee's repeated broken promises over 20-year period.**

Grantee's repeated promises to pay consideration, always broken, over a period of more than 20 years, did not justify delay in commencement of grantor's suit to cancel deed on ground that grantee fraudulent procured conveyance without intending to pay the price agreed on, and does not warrant equity in granting relief notwithstanding laches.

In Equity. Suit by Charles H. Scott against the Empire Land Company. On motion to dismiss bill of complaint. Motion granted.

W. M. Toomer, of Jacksonville, Fla., and Johnston & Garrett, of Kissimmee, Fla., for complainant.

Wilson & Swearingen, of Bartow, Fla., and James F. Glen, of Tampa, Fla., for defendant.

JONES, District Judge. The bill of complaint in this case, after the necessary jurisdictional allegations, charges in substance that the complainant, on the 13th day of May, 1904, conveyed to the defendant, by warranty deed duly executed and delivered, certain described lands in Lee county, Fla.; that this deed set forth a consideration in the sum of $46,080, receipt of which by the complainant is acknowledged in the deed; that the defendant went into possession, recorded the deed, mortgaged the property to the Girard Trust Company, collected and appropriated all the rents, issues, and profits from the lands for more than 20 years, and has never paid to the complainant the consideration set forth in the deed, nor any part of it; that it was understood between the parties at the time of the conveyance that the lands were to be mortgaged as set forth above for the purpose of securing certain bonds to be issued by the defendant, and that the defendant was to pay the purchase price of said lands, either by delivering some of the bonds to the complainant, or paying the complainant in cash out of the proceeds of the sale thereof; that the bonds were duly issued, certified by the Girard Trust Company as trustee, and delivered to the defendant; that the complainant made repeated demands upon the defendant for the payment of the consideration, or the delivery to him of a portion of the bonds as agreed, but defendant failed and refused to do so; and the complainant "is advised and believes that the defendant is now negotiating a sale of said lands, and is threatening and about to convey the same to parties unknown to your orator." The bill then alleges:

"That repeated promises, extending through the years that followed, were made by said defendant to deliver unto your orator the bonds described, or the cash consideration of said deed, but that none of said promises were kept, while, upon the contrary, the defendant sold said bonds, appropriated the proceeds thereof, and has not paid your orator for his lands, either in money or in bonds.

"Your orator, upon the premises hereinabove recited, charges that a deliberate fraud was perpetrated upon him in this: That at the time of the execution, delivery, and receipt of said deed, and the representations made to your orator with respect to the delivery of money or bonds, the defendant did not intend either to pay your orator in money or to deliver to him the bonds mentioned, but upon the contrary intended to utilize your orator's lands as one of the bases of its bond issue, to sell said bonds and appropriate the proceeds thereof, all of which it has done, without the payment of compensation or delivery of the bonds contracted for unto your orator.

"Your orator further alleges that throughout the years that intervened since the making of the said deed, to wit, since May 13, 1904, he continued to rely upon the promises of the defendant to pay him said consideration for said deed either in money or in bonds, and that he continued in this belief until it came to his knowledge, which was in the last three months, that the defendant was endeavoring to dispose of said lands, without having notified or informed your orator or paid the consideration aforesaid."

The bill thereupon, based upon the allega-

tions of fraud set forth above, prays the cancellation of the deed, an accounting and injunction. The defendant has filed a motion to dismiss, and the cause comes on for hearing upon this motion.

While there are five grounds set out in the motion, there are in fact only two objections raised: First, that the claim is stale and barred by laches; second, that the bill of complaint does not set forth facts which would entitle the complainant to the relief sought, or in fact any relief.

[1] It is a well-settled rule that a bill in equity must aver facts on which the complainant bases his right to the relief sought: "Thus, before cancellation can be decreed for fraud practiced in the procurement of a deed, the bill must aver facts from which fraud may be legally deduced; averments which merely amount to conclusions on the part of the pleader, as to its existence, being insufficient." 4 R. C. L. 518; Pratt Land & Improvement Co. v. McClain, 135 Ala. 452, 33 So. 185, 93 Am. St. Rep. 35.

[2, 3] Therefore the complainant in the instant case must be held to the strict rules of pleading, and only allegations of facts, and not conclusions of the pleader, will be considered as admitted under this motion to dismiss. We will first take up the question of laches:

The bill of complaint shows on its face that it seeks relief from an alleged fraud charged to have been perpetrated more than 20 years before the filing of this complaint. The general doctrine of laches is well set forth in Ruling Case Law, under the subject of "Equity," as follows:

"It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. The doctrine is founded principally on the equity maxims, 'he who seeks equity must do equity,' 'he who comes into equity must come with clean hands,' and 'the laws serve the vigilant, and not those who sleep over their rights,' and is based on considerations of public policy. Its object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can

be no longer a safe determination of the controversy." 10 R. C. L. 395; Hendrickson v. Hinckley, 17 How. 443, 15 L. Ed. 123; Slaughter v. Gerson, 13 Wall. 379, 20 L. Ed. 627; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Sullivan v. Portland, etc., Railroad Co., 94 U. S. 806, 24 L. Ed. 324; Hammond v. Hopkins, 143 U. S. 224, 12 S. Ct. 418, 36 L. Ed. 134; McKnight v. Taylor, 1 How. 161, 11 L. Ed. 86; Johnson v. Toulmin, 18 Ala. 50, 52 Am. Dec. 212; Patterson v. Northern Trust Co., 231 Ill. 22, 82 N. E. 840, 121 Am. St. Rep. 299; McElrath v. McElrath, 120 Minn. 380, 139 N. W. 708, 44 L. R. A. (N. S.) 505; Comans v. Tapley, 101 Miss. 203, 57 So. 567, Ann. Cas. 1914B, 367; Calhoun v. Millard, 121 N. Y. 69, 24 N. E. 27, 8 L. R. A. 248; Pendleton v. Galloway, 9 Ohio, 178; Powers' Appeal, 125 Pa. 175, 17 A. 254, 11 Am. St. Rep. 882; Selden v. Kennedy, 104 Va. 826, 52 S. E. 635, 4 L. R. A. (N. S.) 944, 113 Am. St. Rep. 1076, 7 Ann. Cas. 879.

[4, 5] Another well-established rule in this connection is to the effect that a party, desiring to rescind a contract on the ground of fraud, must at once, upon discovery of the fraud, announce his purpose to rescind, and notice of facts or circumstances which would put a man of ordinary intelligence on inquiry is, in the eye of the law, equivalent to knowledge of the facts. Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; McLean v. Clapp, 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804; Hoyt v. Latham, 143 U. S. 553, 12 S. Ct. 568, 36 L. Ed. 259; Shappirio v. Goldberg, 192 U. S. 232, 24 S. Ct. 259, 48 L. Ed. 419; Patterson v. Hewitt, 195 U. S. 309, 25 S. Ct. 35, 49 L. Ed. 214; Davis v. Read (C. C.) 37 F. 418; Rugan v. Sabin, 53 F. 415, 3 C. C. A. 578; Scheftal v. Hays, 58 F. 457, 7 C. C. A. 308; Miller v. Rush (C. C. A.) 276 F. 641; Dill v. Camp, 22 Ala. 258; Young v. Arntze, 86 Ala. 116, 5 So. 253; Memphis & C. R. Co. v. Neighbors, 51 Miss. 422; Roemer v. Conlon, 45 N. J. Eq. 234, 19 A. 664. These rules, together with what constitutes "reasonable diligence," and what facts or circumstances are necessary to put a party upon notice of a fraud, have been elucidated in numerous cases, and it will be of assistance to examine some of them.

The Circuit Court of Appeals for the Eighth Circuit, in the case of Rugan v. Sabin, 53 F. 415, 3 C. C. A. 578, after quoting the Supreme Court of the United States in Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798, to the effect that, "where a party desires to rescind upon the ground of mistake

or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it, * * *" says:

"Nor can a vendor industriously close his eyes, stop his ears, or refuse to believe the evidence of his senses, when notice of the fraudulent practices of a purchaser is placed before him, and thus escape from the application and effect of this principle of law. Notice of facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose."

In Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, the Supreme Court of the United States, speaking through Mr. Justice Swayne and referring to time of notice of a fraudulent transaction or practice, says:

" 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it. * * * The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.' * * * A party seeking to avoid the bar of the statute [laches] on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it."

In a footnote to the case of Tarkington v. Purvis, 9 L. R. A. at page 608, will be found the following:

"If a party intends to rescind a contract on the grounds of its violation by the other party, he must do it promptly, on the first information of such breach. Memphis & C. R. Co. v. Neighbors, 51 Miss. 422; Dill v. Camp, 22 Ala. 258. * * * He should take prompt action to repudiate it when the fraud is discovered, and notify the seller of his purpose to disavow and disown it. Davis v. Read, 37 F. 418. The right to rescind a sale on the ground of fraud must be exercised within a reasonable time after the fraud is discovered, or the time when it should have been discovered. Young v. Arntze, 86 Ala. 116. He must rescind as soon as possible after the discovery of the fraud. Roemer v. Conlon, 45 N. J. Eq. 234."

The Circuit Court of Appeals for the Eighth Circuit, in the case of Scheftel v. Hays, 58 F. 457, 7 C. C. A. 308, in considering a proposition of the appellant to the effect "that no time runs against the victim of a fraud while its perpetrator fraudulently and successfully conceals the facts that would disclose it, * * *" says:

"Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. * * * The victim of a fraud, who has received notice enough to excite his attention and put him on his guard, cannot evade the duty of speedy and diligent inquiry by merely calling on the chief perpetrator, whose interest it is to conceal the facts, to reiterate or prove his false statements."

This same doctrine is laid down by the Circuit Court of Appeals for this circuit (the Fifth) in the case of Miller v. Rush, 276 F. 641, wherein it is said:

"The right to a rescission or cancellation of a deed or contract because of fraudulent representations is lost, if the party seeking such relief fails, after discovering the falsity of the statements whereby he was influenced to enter into the transaction, to use reasonable diligence to disaffirm it; and notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose."

In the light of these authorities let us examine the bill in this case, and see if the complainant acted promptly to disaffirm the conveyance of this property to defendant upon discovery of the alleged fraud, or of "facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry."

[6] The fraud complained of is, as stated above, the intention of the defendant, at the time the conveyance of these lands was made, not to pay the purchase price agreed upon in cash or bonds. The bill of complaint shows that the mortgage or deed of trust covering these lands executed by the defendant to the Girard Trust Company was entered into on the 11th day of January, A. D. 1905; that the bonds provided for in said trust deed were issued and delivered to the defendant; that they were sold by the defendant and the proceeds thereof appropriated to its own use, "without the payment of compensation or delivery of the bonds contracted for unto your orator." While the bill is silent as to the date these bonds were sold and the money appropriated, as alleged therein, it shows that it was a number of years before

this suit was brought, for, after alleging the execution of the mortgage or deed of trust on January 11, 1905, and the delivery of the certified bonds to the defendant, the bill says:

"That repeated promises, extending through the years that followed, were made by said defendant to deliver unto your orator the bonds described, or the cash consideration of said deed, but that none of said promises were kept, while, upon the contrary, the defendant sold said bonds, appropriated the proceeds thereof, and has not paid your orator for his lands either in money or in bonds."

The bill of complaint also alleges:

" * * * And notwithstanding, during the years intervening between the date of delivery of said deed, repeated demands have been made upon the defendant for payment of said consideration, but, on the contrary, the defendant has failed and refused to pay said consideration, or any part thereof, and has caused your orator's deed to it to said premises to be recorded (June 8, 1904), and has caused said lands to be included within the terms of a deed of trust to Girard Trust Company, which deed of trust or mortgage has been lately paid and satisfied."

In addition to the above, the bill shows that during all the years since May 13, 1904, this defendant has "had the rents, issues, and profits of said premises, has made no accounting, statement, or settlement with your orator on account thereof. * * * " Are not these facts, known to the complainant "through the years that followed," sufficient to have given notice to a "man of ordinary prudence and intelligence" that this defendant did not intend to make payment as agreed? It seems to me they are.

Through more than 20 years, the bill shows, the defendant exercised ownership over these lands, mortgaging the same, selling bonds secured by the mortgage, appropriating the proceeds thereof to its own use, using the rents, issues, and profits from the property, and in every way controlling the same, without any regard or consideration of any right supposed to have been in this complainant. During all these years, the bill shows, the defendant made "repeated promises" to pay, but repeatedly "failed and refused" to carry out his said promises; and it seems to me a man of "reasonable intelligence," unless he did "industriously close his eyes, stop his ears, or refuse to believe the evidence of his senses," would have known of the alleged fraud. No effort, during the years when both a court of law, in

a suitable action to recover the purchase price of these lands, and a court of equity, to enforce a vendor's lien therefor, afforded adequate remedies, was made by the complainant to enforce these rights. He now comes to a court of chancery, after the statute of limitations has run against the above-described remedies, and asks this court to relieve against an alleged fraud, notice of which, "in the eye of the law," he has had for many years.

[7] "The law serves the vigilant, and not those who sleep over their rights," and it is clear to my mind that this complainant, through failure to exercise "reasonable diligence," has "slept over his rights," has been guilty of laches, and therefore this court, sitting as a court of chancery, should "remain passive and do nothing." The motion should be granted on the ground of laches.

[8] We will now take up the second objection, that the bill does not allege facts justifying relief in equity. There are two doctrines as to the jurisdiction of courts of equity in matters of fraud. What is known as the English doctrine lays down the rule that courts of equity have jurisdiction to relieve against practically every species of fraud, such jurisdiction being concurrent with that of courts of law; and the American doctrine, to the effect that courts of equity have no jurisdiction to relieve against fraud when there is a "full, complete, and adequate remedy at law." This American doctrine is undoubtedly the rule in the federal courts, for the reason that the Judicial Code provides:

"Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law." Section 267, Judicial Code (36 Stat. 1163 [Comp. St. § 1244]).

[9] There is no doubt in my mind that the complainant in this case, had he acted with "reasonable diligence," had a "plain, adequate, and complete remedy at law" in a suit to recover the purchase price of these lands. Being convinced that complainant has not acted with the "reasonable diligence" required by the rules of equity, it might be sufficient to end the discussion here by saying that, having his remedy at law, a court of equity will not afford relief. Inasmuch, however, as the time to enforce his remedy at law has expired by statute of limitation, I will further consider the question of the sufficiency of the bill under this objection.

[10] The well-established general rule, in cases of fraud, based upon misrepresenta-

tions, is that the misrepresentations must be concerning present, existing facts, and may not be based upon mere promises, which are not carried out, or which are falsely made. False representations must be of an existing and ascertainable fact, and not matter of opinion or advice, and must be false and known to be false by the party making them at the time, and on which the other party relies. Cooper v. Schlesinger, 111 U. S. 148, 4 S. Ct. 360, 28 L. Ed. 382; Shields v. Hanbury, 128 U. S. 584, 9 S. Ct. 176, 32 L. Ed. 565; Farnsworth v. Duffner, 142 U. S. 43, 12 S. Ct. 164, 35 L. Ed. 931; Church v. Swetland, 243 F. 289, 156 C. C. A. 69; Slaughter v. Gerson, 13 Wall. 379, 20 L. Ed. 627; Sawyer v. Prickett, 19 Wall. 146, 22 L. Ed. 105; Harrington v. Rutherford et al., 38 Fla. 321, 21 So. 283; Beach v. Williamson, 78 Fla. 611, 83 So. 860, 9 A. L. R. 1438.

[11] There is, however, an exception to this general rule, which is to the effect that, where such promises are made, with no intention or ability to carry them out, the same will be considered fraud, and equity will relieve against such fraud; but in all these cases the facts to show the intention not to carry out promises must be clear and unquestioned, and courts of chancery in such cases will enter into no presumptions or surmises in this connection. "Fraud will not be presumed as matter of law or fact, except under circumstances which do not admit of any other interpretation, and facts showing the fraud must be averred in the pleadings." Farrar v. Churchill, 135 U. S. 609, 10 S. Ct. 771, 34 L. Ed. 246; Davis v. Schwartz, 155 U. S. 631, 647, 15 S. Ct. 237, 39 L. Ed. 289; Moss v. Riddle, 5 Cranch, 351, 3 L. Ed. 123; Voorhees v. Bonesteel, 16 Wall. 16, 21 L. Ed. 268; Eyre v. Potter, 15 How. 42, 14 L. Ed. 592.

The Supreme Court of the United States, in a well-considered opinion by Mr. Justice Harlan in the case of Richards v. Mackall, 124 U. S. 183, 8 S. Ct. 437, 31 L. Ed. 396, says: "That a party who makes an appeal to the conscience of the chancellor should (quoting from Badger v. Badger, 2 Wall. 87), 'set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise, the chancellor may justly refuse to consider his case. * * * '"

It seems to me that the law as here laid down applies to the case under considera-

tion and is decisive thereof. What facts are set forth in the instant bill of complaint showing any "impediments to an earlier prosecution of his claim"? The only allegation of fact that could be interpreted as such an explanation is the following:

"That repeated promises, extending through the years that followed, were made by said defendant to deliver unto your orator the bonds described, or the cash consideration of said deed, but that none of said promises were kept, while, upon the contrary, the defendant sold said bonds, appropriating the proceeds thereof, and has not paid your orator for his lands, either in money or in bonds."

[12] These repeated promises, always broken, covering a period of more than 20 years, do not, in my opinion, show any justification for the delay. What facts are alleged to show "how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance"? The only facts are the allegations just quoted concerning the promises, and to offset these the bill shows that the complainant had knowledge for many years that these bonds had been delivered to the defendant and sold, and that the defendant, in "response to repeated demands" for payment, "failed and refused to pay said consideration, or any part thereof."

What facts appear to show "how and when he first came to a knowledge of the matters alleged in the bill," that is, knowledge of the fraud said to have been perpetrated? The only allegation in this connection is the explanation to the effect that " * * * it came to his knowledge, which was in the last three months, that the defendant was endeavoring to dispose of said lands, without having notified or informed your orator or paid the consideration aforesaid." It does not appear to me that the offer of the defendant to sell the land, without notifying the complainant, would be any more evidence of its intention 20 years or more ago to defraud him, than the facts, known to him for years, that it had received the bonds, sold them, appropriated the proceeds therefrom, as well as all the rents, issues, and profits from the property, and through all these years "failed and refused" to meet repeated demands to pay in compliance with oft-made promises.

I feel that the position of the complainant in this case is identical with that of the complainant in Richards v. Mackall, supra, described by Mr. Justice Harlan as follows: "But after the property has largely increas-

ed in value, and after sleeping upon his rights for nearly 12 years, with information, during the whole of that period, of every fact now relied upon by him, appellee asks the aid of a court of equity to set aside the sale and conveyance, and adjudge him to be the owner of the property."

This complainant had knowledge of facts, during practically 20 years, which were more indicative of defendant's intent not to carry out its promises than the recent alleged offer to sell the property, and, as said in the above-referred to case of Richards v. Mackall, "he is not in a position to claim the interference of a court of equity."

The motion to dismiss, upon the ground that the bill does not set forth facts entitling complainant to equitable relief, should be granted. An order in accordance with this opinion will be entered.