This is an equitable proceeding brought under General Statutes, § 5035. The controversy involves disputed claims by each party to title to lot No. 19 on Lake of Isles development in North Stonington. The plaintiff claims to have acquired title to this lot by the quitclaim deed from The Air Proof Rubber Company on January 28, 1930, by deed recorded on that date. The defendant claims to have acquired title to the *Page 466 
lot by purchase at a tax sale on July 1, 1944, followed by a tax collector's deed dated on said day but recorded on July 2, 1945. The derivation of title in the defendant is by deed from The Air Proof Rubber Company to William Dorman dated August 28, 1926, deed from William Dorman to Antonio Gerosa dated July 23, 1930, and deed from Gerosa to Angelo Del Grosso, dated August 2, 1930, all of which deeds were recorded on April 12, 1932, more than two years after recording of plaintiff's deed. The tax sale resulted from failure of Del Grosso to pay taxes on said lot from April 16, 1936, through July 1, 1943.
The plaintiff bases his right to recover entirely on prior recordation of his deed. The defendant bases his cross-complaint on adverse possession and laches.
The conveyance to the plaintiff was by quitclaim deed. By this deed the grantor conveyed only such title as it had or ought to have in the disputed land. At the time of conveyance it had no title to lot No. 19 because it had previously conveyed it to Dorman. Because of Dorman's failure to record his deed the plaintiff is not charged with notice thereof and his record title was superior to that of Dorman and his successors by virtue of the provisions of § 5010. It must be held, therefore, that the conveyance to Dorman was ineffectual against the plaintiff, and that the latter took the land in question free from any claims of prior unrecorded deeds.
Were this the only question involved the court would not hesitate to award the plaintiff the benefits of the protective shelter afforded by the statute. The evidence, however, discloses a course of conduct by him which may well defeat the advantages of prior recording.
The evidence indicates that beginning in 1930 Del Grosso began using this lot and that such use continued by him, members of his family or successors in title until this action was instituted. Such interruption in use as occurred was not due to abandonment thereof but rather to weather conditions and inaccessibility. Considering the nature and location of the lot in question and the limited uses for which it was adaptable, the conclusion is compelling that it was used adversely, notoriously, exclusively and hostilely and under a claim of right for the statutory period. Lucas v. Crofoot, 95 Conn. 619, Schroeder v.Taylor, 104 Conn. 596. *Page 467 
There could not have been a more eloquent public proclamation of adverse user than the recording of Del Grosso's deed in April, 1932, which was notice to the world that he claimed title to the land. General Statutes, § 5016; Lucas v. Crofoot, supra. A deed purporting to convey property is an assertion of the grantor's own title and a denial of title in another, and a user under such a deed is under a claim and color of right which is equivalent to an ouster of other claimants as to whom the grantee thereafter holds adversely. It is the policy of our law to make every man's title to his real estate, as far as practicable, appear of record, and the land records are constructive notice to all the world of any instruments there recorded. Butchers' Ice SupplyCo. v. Bascom, 109 Conn. 433, 440. The plaintiff is, therefore, charged with notice of Del Grosso's deed, and that, in conjunction with his use of the land beginning in 1930, creates title by adverse possession, and the plaintiff is barred from entry on the land because of his failure to do so within the statutory period. General Statutes, § 6004. The defendant and his predecessors in title acquired title adversely by the adverse use and enjoyment thereof continuously and uninterruptedly for fifteen years. § 5965; Smith v. Chapin, 31 Conn. 530.
This conclusion is sufficient to grant the defendant's prayers in his cross-complaint. In addition thereto, it seems to the court that the plaintiff both by his actions and inactions forfeited any rights to equitable relief. From the time of acquisition of the land by the plaintiff through the time of the tax sale his inattention and indifference relating to the land amounted to negligence. He knew when he got his deed that it included lots not intended to be sold because of prior alienation. There was, therefore, some duty upon him to inquire whether lots, other than those for which deeds had been recorded, had been sold. Undoubtedly inquiry would have disclosed a prior sale of this lot, and, although he is afforded priority under § 5010 he is not relieved from an obvious duty, under the circumstances, imposed by equity.
This fact, coupled with apparent claim of ownership in another by deed and use, called for seasonable action by him to hold and protect rights sanctioned by law. Perhaps his most flagrant act, or lack of it, occurred in connection with the tax sale. He must or should have known that this lot had not been taxed to him since 1932 or 1933 and yet he did nothing to correct the records in the collector's office. He knew that property to which he claimed title was being sold at a tax sale and yet he *Page 468 
misled all bidders by bidding for the lot himself. Even after the tax sale he had a year in which to correct the error by paying the taxes, as owner, and thus save the purchaser at the tax sale the resulting loss of the purchase price paid by him. He did nothing at all until three years after the tax sale. Such conduct is no foundation on which to build an equitable structure. A court of equity, which is never active against conscience, has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call this court into activity but good conscience and reasonable diligence. Delay in the assertion of a right which works disadvantage to another is laches, and equity will not aid such neglect or omission. Bassett v. City Bank Trust Co.,116 Conn. 617; Phelps v. Grady, 168 Cal. 73, 77; Scott v. EmpireLand Co., 5 F.2d 873; Blume v. Crawford, 217 Iowa 545; Hall
v. Mortgage Security Corporation, 119 W. Va. 140.
 For these reasons the issues on the plaintiff's complaint and defendant's cross-complaint are found for the defendant and judgment may enter accordingly. Prayers in the cross-complaint numbered 1, 2 and 3 are granted. There was no evidence to support prayer No. 4 and it should be withdrawn or disallowed.
It should be noted that the court has taken no notice of the disputed location of Lot 19. This question is not before the court and not encompassed by the pleadings, and therefore no action is called for.