[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION FACTS
FACTS
The plaintiff, Nutile Acres Association, Inc., commenced this action against Alfred and Susanne Conroy and Shawmut Mortgage Company seeking a foreclosure of a lien and costs based upon delinquent assessments from 1980 through 1992, inclusive. Annual assessments were pursuant to the Declaration of Covenants and Restrictions dated December 31, 1991 and recorded January 21, 1992 in the Guilford Land Records. The defendants, Alfred and Susanne Conroy, purchased the subject property, 66 Canary Court, Guilford, on January 28, 1993.
It is uncontested that the assessments were delinquent for 66 Canary Court from 1980 until 1992.
It is also agreed that, but for the assessment and lien language contained in the Declaration of Covenants and Restrictions, the only notice of lien on the Land Records is the notice contained in Plaintiff's Exhibit E. That notice, which was recorded on August 21, 1981, states:
 Pursuant to Article V of a `Declaration of Covenants and Restrictions' executed by William T. Esposito on December 3, 1971, this is to certify that Nutile Acres Association, Inc. has a lien for Annual/Special Assessments for the year(s) 1980-1981, totalling $100, plus interest and costs of collection on premises in the name of Craig Geiselhart and being #66 Canary Ct., Guilford, Connecticut.
Article V of the Declaration of Covenants and Restrictions, CT Page 227 Plaintiff's Exhibit C, deals with the "COVENANT FOR MAINTENANCE ASSESSMENTS", the Declaration provides:
 Section 1. Creation of the Lien and Personal Obligation of Assessments. The Developer for each Lot owned by him within The Properties hereby covenants and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, be deemed to covenant and agree to pay to the Association: (1) annual assessments or charges; (2) special assessments for capital improvements, such assessments to be fixed, established and collected from time to time as hereinafter provided. The annual and special assessments, together with such interest thereon and costs of collection thereof as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with such interest thereon and cost of collection thereof as hereinafter provided, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due.
Article V then goes on to provide the purpose of the assessment, the basis and maximum amount of the annual assessments, a provision for special assessments for capital improvements, rules with regard to a change in the basis and maximum of annual assessments, rules for a quorum for action on the assessment, and finally the date for commencement of the annual assessment.
The deed from Craig Geiselhart to the defendants Alfred and Susanne Conroy is recorded in Volume 413, Page 959 of the Guilford Land Records. That deed provides:
 Said premises are subject to Protective Covenants executed by Benedict Nutile, et al, on November 17, 1970 and recorded in Guilford Land Records in Volume 183 at Page 296; Assessments of Nutile Acres Association, Inc.; . . . a Declaration of Covenants and Restrictions executed by William T. Esposito dated December 3, 1971 and recorded in said Land Records in Volume 191 at Page 227."
At trial on this matter the court allowed the defendant to amend its answer and to set up special defenses, claiming that the liens were invalid pursuant to Conn. General Statutes § CT Page 22847-77 and § 47-258. The court also extended to each party the opportunity for post-trial briefs dealing with the validity or invalidity of the special defenses allowed by amendment at trial. The defendant filed a post-trial brief on November 10, 1995 and the plaintiff filed a post-trial brief on November 27, 1995.
DISCUSSION
The court finds that the Condominium Act of 1976 has no application to the matter before it because, while the subdivision with its common areas and assessments is a common interest community, it is not a condominium. The court also finds that the Unit Ownership Act of 1963 has no application because the somewhat restrictive definitions of the 1963 Unit Ownership Act are not broad enough to include a subdivision. The present Common Interest Ownership Act, § 47-258(e), would apply to this subdivision. This subdivision is a common interest community within the meaning of that act. However, for the reasons set forth more fully in Mountainbrook Property Owners Association,Inc. v. Sally J. Saldamarco et al, 14 Conn. L.Rptr. No. 18, 563 (September 18, 1995) (J.D. of New Haven at New Haven, Celotto, S.T.R.), the court finds that the Common Interest Ownership Act is not effective to impose its two-year statute of limitations on the present claim.
The subdivision is a "common interest community" because the agreement which was recorded describes real property for which the lot owners are required to pay a proportionate share of maintenance of the common areas. Section 47-216 provides in pertinent part that" . . . § 47-258 . . . apply to all common interest communities created in this state before January 1, 1984, but . . . only with respect to events and circumstances occurring after January 1, 1984 and [does] not invalidate existing provisions of the declaration, by-laws or surveys or plans of those common interest communities." Regardless of whether § 47-216 is procedural or substantive, application of § 47-258(e) would nullify Article V of the declaration and would extinguish these liens. However, because the second requirement under § 47-216 is not satisfied, § 47-258(e) does not apply to the liens at issue in this case.
In the view which the court takes of the case, it is unnecessary to decide whether the plaintiff has a common law lien created by the declaration. The very purpose intended by the legislature in adopting § 47-258(e), which provides that an CT Page 229 association must bring an action within two years of the assessment becoming due or that lien is extinguished, was to avoid precisely the situation before this court. A purchaser for value with no notice except of the general right to lien is faced with an attempt to collect liens from 1980 through 1992, together with interest, cost and fees.
The court holds that the instant matter is properly decided in accordance with the Court of Common Pleas' decision in BarneyGirden v. John Alubowicz, 15 Conn. Sup. 465, 467, 468 (1948). In that case the court wrote:
 . . . [I]t seems to the court that the plaintiff both by his actions and inactions forfeited any right to equitable relief. . . . A court of equity, which is never active against conscience, has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call this court into activity but good conscience and reasonable diligence. Delay in the assertion of a right which works disadvantage to another is laches, and equity will not aid such neglect or omission." Bassett v. City Bank and Trust Co., 116 Conn. 617; Phelps v. Grady, 168 Cal. 73, 77; Scott v. Empire Land Co., 5 F.2d 873; Blum v. Crawford, 217 Iowa 545; Hall v. Mortgage Security Corporation, 119 W. Va. 140.
The court holds that when the association allowed the assessment to be unpaid from 1980 until the present acquisition in 1992 and took no action other than the single notice of lien more than ten years ago, the association was guilty of laches.
For the foregoing reasons the court finds for the defendant.
THE COURT
BY: KEVIN E. BOOTH, JUDGE