CHARLES McKNIGHT, APPELLANT, *v.* LAWRENCE B. TAYLOR, TRUSTEE, &c.

There must be conscience, good faith, and reasonable diligence, to call into action the powers of a court of equity.

In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere, after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice, when the original transactions have become obscure by time, and the evidence may be lost.

THIS was an appeal from the equity side of the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria.

The facts in the case are fully stated in the opinion of the court, to which the reader is referred.

*Semmes* and *Jones*, for the appellant.

*Lee* and *Bradley*, for the appellee.

*Semmes*, for the appellant, contended that the decree of the court below was erroneous, and should be reversed for the following, among other reasons.

1. Because there is no equity in the bill or supplemental bill, and no case made for the interference of the court.

2. Because it decrees debts to be paid which the record shows has already been paid.

3. Because it decrees the debt mentioned in the schedule as that due to Thomas Janney and Co., to be paid to John Lloyd, who claims by virtue of various assignments named in said decree.

4. Because it did not allow the appellant, a lien on or *pro rata* dividend out of the trust fund for the debts paid off, and assigned for his use, as shown in the record.

5. Because the court should have presumed payment of the debts, in the absence of all evidence showing them still due, after the great lapse of time; or, if the court believed them still unpaid, they should have presumed an abandonment of the claims by the creditors from their laches and the lapse of time; and therefore erred in decreeing relief to claimants whose demands were stale, and who had knowingly slept upon their rights.

6. Because the court should, for like reason, have presumed a performance of the covenant contained in the deed of trust executed between the appellant and Robert I. Taylor, for payment of the schedule debts—a release of the same, or that it was abandoned or extinguished.

7. Because, if the said covenant was any part of the grounds or foundation of their decree, the court erred in deereeing upon it in favour of parties between whom and the covenantor there was no privity; or, if there was any such privity, then, because the covenant was a personal matter, disconnected from the trust, and upon which the remedy was by action at law; and more especially as there was no prayer in the bill for an enforcement of the covenant.

8. Because, if it was right under the circumstances to give any relief at all, the court should have decreed only the principal of the debts found due, and should, on account of the laches, have refused to allow any interest, on the principle on which the account of profits was denied in Acherly v. Roe, 5 Ves. 565; or, upon the principle of Pickering v. Lord Stamford, 2 Ves. jr. 272, 581, interest should have been allowed only from the filing of the bill; the plaintiffs having gone into equity for general relief, and not for an enforcement of the covenant in the deed, on which there was full remedy at law.

On the subject of the lapse of time, he cited 5 Leigh, 350; 6 Wheat. 481; 4 Johns. 1; 9 Peters, 416; 5 Leigh, 381; 7 Johns. 556; 2 Nott and McCord, 360; 9 Leigh, 393; 2 ˜ ˜ldwin, 477; Cowper, 109.

*Bradley,* for appellee.

As to lapse of time: there was a covenant between McKnight and Taylor, the consideration of which was the forbearance of creditors to sue, and they did forbear. 3 Swanston, 417. As to the presumption of payment: it is not well settled whether it is a matter of fact or law. Hughes v. Edwards, 9 Wheat.; same case in Cond. Rep. 654, 655; Elmendorf v. Taylor, 10 Wheat. 152; same case in Cond. Rep. 55, 56. See also, 10 Leigh, 284.

*Jones,* for appellant.

A decree must follow the equity of the bill, but the court below has not done it. Hellary v. Waller, 12 Vesey, settles the rule

that a court of equity will put itself in the position of a court and jury. The trustee, here, had full legal power to sell without coming to equity, and courts act on different principles when called upon to lend their aid, than when acting regularly. Ambler, 645. The creditors, generally, do not answer or take any notice, but appear to have abandoned the claim. Only one acts. This circumstance ought to be coupled with the staleness of the demand.

Mr. Chief Justice TANEY delivered the opinion of the court.

This is an appeal from the decree of the Circuit Court of the District of Columbia, for the county of Alexandria, sitting in chancery.

It appears from the record, that the appellant Charles McKnight, by deed bearing date the 29th day of September, 1813, conveyed to Robert I. Taylor, certain real property described in the deed, situate in the town of Alexandria, upon trust, to permit the appellant to occupy the same, and to receive the rents and profits without account, until a sale should become necessary, under the terms of the deed; and if he, the said Charles McKnight, should not on the 1st day of April, 1818, have paid the several creditors named in a schedule, annexed to the deed, the debts therein mentioned with interest, then the said Robert I. Taylor should, on notice of such default from any one of the said creditors or his representatives, proceed to sell the said property, or so much thereof as might be necessary, for cash at public auction, after giving three weeks notice of the time and place of sale, by advertisement in any paper published in Alexandria, and after defraying the reasonable expenses of sale, discharge the aforesaid debts with all interest due thereon.

The bill in this case was filed in August, 1837, by Robert I. Taylor, the trustee above mentioned, and after setting forth the deed of trust, proceeds to state that Thomas Janney and Co. (who are named as creditors in the schedule) had assigned the debt due to them, to Joseph Janney in trust for the payment of their creditors; and that Joseph Janney, under a provision in the deed of assignment, afterwards transferred the same to George Johnson, in trust for the same purpose; and that the complainant had been required by the said George Johnson, and by certain

other creditors named in the schedule, (but who are not named in the bill,) to sell the premises, so as aforesaid conveyed to him in execution of the trust; that the debts mentioned in the schedule were due from McKnight, the appellant, and John Stewart, who had been trading under the firm of McKnight and Stewart, and that no part of any of them had been paid. The bill further states that before the execution of this deed, the appellant had, on the 30th of April, 1808, conveyed a part of the same premises to a certain Jacob Hoffman, in order to secure Thomas Janney, against his responsibility as endorser on two notes discounted at the Bank of Alexandria and the Bank of Potomac; and that the said notes had been long before paid, although the property had not been re-conveyed to the appellant: that McKnight was giving out that the debts in the schedule had been all paid, and threatened to withhold possession if the trustee proceeded to sell under the deed, and that from these declarations of the appellant, and the outstanding legal title, the sale could not be made without injury to the interests of the parties concerned, without the aid of the Court of Chancery; and prays process against the heirs of Hoffman, (he being dead,) and against McKnight and Stewart, and all of the creditors named in the schedule; and, among the rest, against George Johnson, in order that they may be compelled to appear and answr the several matters charged in the bill. A supplemental bill was afterwards filed, in order to make additional parties, and for other purposes; but in the view which the court take of this subject it is unnecessary to state its contents. The creditors secured by the deed of trust are eleven in number, their respective claims varying in amount: the lowest being $85 72, and the highest $1227 19. The trustee, Robert I. Taylor, is himself one, and the debt due him stated to be $214 54.

To this bill Hugh Smith, one of the creditors, whose debt was $151, answered, saying merely that his claim is still due.

James Carson, another of the creditors whose claim was $85 72, answered and admitted that he had been paid.

The heirs of Hoffman also answered, and admitted that the notes intended to be secured by the conveyance to their father had been paid; and submit themselves to such decree as the court may deem just.

The answer of the appellant, so far as it is material to set forth

its contents, states that the claim of Thomas Janney and Co., which was $1022 69, was due upon open account, and that the respondent was entitled to a deduction of considerably more than $300 for money overpaid by mistake on the settlement of a former account, but that he cannot find a memorandum in writing to establish it, which he knows did once exist; and that after the execution of the deed of trust he transferred to Thomas Janney, on account of this debt, the note of a certain Jonathan Mande-ville, for $467 08, due on the 20th of January, 1815, which, from what Janney himself afterwards told him, he believes to have been paid; and in respect to this item, his answer is responsive to the bill.   He also specifies several creditors whose claims he states that he has paid, and among them the trustee, Robert I. Taylor, and he sets forth the manner in which he satisfied that debt.   Some of the creditors mentioned in the schedule are not, however, named in his answer; and he mentions three whom he admits that he has not paid, and makes the same admission as to the small balance which would be due to Thomas Janney and Co., after deducting the credits claimed by him as above stated; but he does not admit that these debts are yet due, and insists that there is every reason to believe that they were paid by his former partner, Stewart, who was equally liable with himself; or, if not paid, that it was owing to the negligence and laches of the creditors in not proceeding against him; the respondent alleging that Stewart, after the dissolution of the partnership with him, removed to Martinsburg, in Virginia, about the year 1812, where he carried on a prosperous business until his death in 1825, and was fully able to pay these debts if the creditors had used proper diligence to recover them; and he relies upon the lapse of time as a good defence upon principles of equity against this pro-ceeding.

There is a general replication to this answer; and it appears in evidence that upon the dissolution of the partnership of McKnight and Stewart, in 1812, a notice of it was published in the newspapers, stating that McKnight was authorized to collect the debts and settle the business of the concern.   And a witness was also examined on the part of the complainant, who states, that from a perfect knowledge of the pecuniary situation of Stew-art, from 1812, until his death, he knows that he was insolvent

when he removed from Alexandria to Martinsburg, and that he continued and died insolvent; that he had no property he could call his own, and out of which an old debt of $100 or $200 could have been made.

It also appears in evidence, that Thomas Janney and Co., on the 30th of April, 1823, assigned all their effects and claims to Joseph Janney, in trust to pay their debts. That by virtue of a provision contained in this deed of assignment, Joseph Janney afterwards, on the 10th of August, 1829, renounced the further execution of the trust, and transferred all the property and claims that remained in his hands to George Johnson, in trust for the same purposes for which they had been conveyed to him. And on the 14th of November, 1837, after this bill was filed, Johnson sold and assigned all the effects and claims which he then held as trustee of Thomas Janney and Co., to John Lloyd, of Alexandria; and on the same day executed a power of attorney in his favour, authorizing him to receive whatever might be recovered in this suit, or on any other claims of Thomas Janney and Co., and to compromise and settle them in any manner he might think proper. The consideration paid by Lloyd is not stated, nor indeed does it appear by the assignment, that any consideration whatever was paid. The deed of assignment merely states that Johnson had sold these effects and claims to Lloyd, and authorizes him to collect, compromise, and settle them.

The bill was taken *pro confesso* against all of the creditors who had not appeared and answered, and the Circuit Court proceeded on final hearing to decree that the appellant should pay the full amount of the debts mentioned in the schedule, with interest, by a certain day specified in the decree, except those of Joseph Janney, John Leo, and James Carson, which were admitted to have been paid; and in default of payment by the day limited in the decree, the property was directed to be sold and the proceeds applied to discharge the aforesaid debts.

This is the case in its material parts, as presented in the record. The omission of the creditors to appear and answer, upon which the bill as against them was taken *pro confesso*, was not, of course, regarded by the Circuit Court as establishing their claims. The decree, we presume, proceeded upon the ground that the creditors mentioned in the schedule were entitled to the aid of the court

to enforce the payment of the whole amount originally admitted to be due, unless the appellant could show by legal proofs that the debt had been since discharged.

Now, of the eight creditors in whose favour the decree was made, five of them seem to have taken no concern in these proceedings, and for aught that appears in the record, may not have known that it was pending; certainly there is nothing to show that they ask or desire the interposition of the court in the manner sought for by the bill.　Of the remaining three, one has answered and stated that his claim is still due, but does not ask for a sale, nor say any thing that sanctions, on his part, the proceedings of the trustee; and the trustee himself does not ground the bill upon his own claim, nor allege its nonpayment as the foundation of the suit, but places it entirely upon the notice and request of George Johnson and other creditors, and his own duty upon such an application to proceed to sell according to the provisions in the deed of trust.　But, although the application is alleged to be made by other creditors, as well as George Johnson, yet no other creditor has appeared to claim the execution of the trust; and, as they were all made defendants and called to answer, and have refused or neglected to appear, the bill under the provisions of the deed must be regarded as founded exclusively upon the application of the creditor named in it; and as instituted and conducted without the co-operation or request of any other creditor.

In relation to this claim, it appears that nineteen years and three months were suffered to elapse, before any application was made for the execution of the trust by which it had been secured. No reason is assigned for this delay; nor is it alleged to have been occasioned in any degree by obstacles thrown in the way by the appellant.　As the record stands, it would seem to have been the result of mere negligence and laches.　The original creditors were in business ten years after the deed was made, and five years after the expiration of the credit which it gave to McKnight and Stewart.　And as they became insolvent in 1823, it must be presumed that in the last-mentioned period they were themselves pressed for money.　The property is situated in the town of Alexandria, where the laws of Virginia have been adopted by Congress; and the trustee, under these laws, had an undoubted right to sell, upon the application of any creditor, as soon

as default was made, without asking the interposition of the Court of Chancery. Such delay, under such circumstances, by the original creditors, followed by fourteen years more by the assignees who afterwards had charge of this claim, can perhaps hardly be accounted for without supposing that this debt had been nearly, if not altogether, satisfied in the manner suggested in the answer of the appellant. If, indeed, the suit had been postponed a few months longer, twenty years would have expired, and in that case, according to the whole current of authorities, the debts in the schedule would all have been presumed to be paid. But we do not found our judgment upon the presumption of payment. For it is not merely on the presumption of payment, or in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscure by time, and the evidence may be lost. The rule upon this subject must be considered as settled by the decision of this court in the case of Piatt *v.* Vattier, 9 Peters, 416; and that nothing can call a court of chancery into activity but conscience, good faith, and reasonable diligence and where these are wanting, the court is passive and does nothing; and therefore, from the beginning of equity jurisdiction, there was always a limitation of suit in that court.

It certainly cannot be said that there has been any thing like reasonable diligence by any of the creditors in the case before us; and at this distance of time, when many of the parties originally concerned are dead, we should hardly do justice between them if we required the appellant to pay the whole amount stated in the schedule, unless he can establish the credits he claims by legal proofs. In fact, but one of the creditors appears to have called for this proceeding, or to have sanctioned the institution of this suit; and the party who now holds that claim and seeks to enforce it, has obviously no equitable ground upon which he can ask for a relaxation of the rule in his favour. When the assignment was made to him he knew it was a disputed claim in actual

litigation at the time, which had been allowed to sleep for almost twenty years, and for which it does not even appear that he paid any valuable consideration. And as to all of the creditors named in the schedule, they had originally an easy and simple remedy in their own hands, to be used or not at their own pleasure; and if they have suffered it to be lost by the lapse of time, their own negligence can give them no right to call into action the powers of the Court of Chancery.

The decree of the Circuit Court must therefore be reversed, and the bill dismissed with costs.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this court, that the decree of the said Circuit Court in this cause be and the same is hereby reversed, with costs; and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to dismiss the bill of the complainant with costs.