Succession of De Goenaga v. Succession of Gallardo.

# SUCCESSION OF JOSÉ RUFINO DE GOENAGA

*v.*

## SUCCESSION OF RICARDO GALLARDO,

and

## SUCCESSION OF WILLIAM NOBLE

*v.*

## SUCCESSION OF RICARDO GALLARDO.

San Juan, Equity, Nos. 509 and 524.

1. So-called "contratos de refacción" dated as long ago as 1862 to 1865, are stale, and will not, at the present time, be enforced by a court of equity when no excuse is shown for such unusual delay in and about the foreclosure thereof.
2. Statutes of limitation are not necessarily followed by courts of equity, because there can be gross laches even within the term of a lengthy statute of limitation.
3. Conscience, good faith, and reasonable diligence alone call into action the powers of a court of equity. McKnight v. Tyler, 1 How. 161, 11 L. ed. 86.

Opinion filed July 6, 1909.

*Mr. N. B. K. Pettingill,* attorney for complainants.

*Mr. Henry F. Hord,* attorney for respondents.

Succession of De Goenaga v. Succession of Gallardo.

RODEY, Judge, delivered the following opinion:

The above two suits are bills in equity for the enforcement of so-called mortgages or "refacción" contracts or liens on identical land, which is situated near Loiza on this island. The issue is on a motion by complainants in suit No. 509, for leave to intervene in suit No. 524, and the issue in the latter suit is raised by a plea of laches, staleness of demand, and that the cause is barred by several statutes of limitation. In the argument on these issues, the cases were heard together, and, as the conclusion we have arrived at warrants it, we will consider and dispose of them together.

The bill in No. 509 was filed on October 22d, 1907, and in 524, about two and a half months later, on January 9, 1908. On December 3d, 1907, respondents in suit No. 509 filed a plea alleging the Porto Rican citizenship of all the parties, and hence claiming that the court was without jurisdiction. A reading of the whole bill would indicate that this fact is probably true, notwithstanding a contrary allegation in the stating part of it. It would also appear as though complainants knew the plea was in fact true, because, without joining issue thereon, their counsel, under date of April 7th, 1908, appears to have entirely abandoned the case, and on that day filed a motion asking leave for all the complainants therein to intervene as complainants in suit No. 524, and accompanied this motion with an exact copy of the bill of complaint that he had filed in suit No. 509.

In suit No. 524, under date of March 3, 1908, respondents pleaded gross laches, inexcusable delay, and several statutes of limitation, and, under date of April 11, 1908, after the petition for leave to intervene had been filed, they came in and opposed

the granting of such leave, because, as alleged, the parties thus asking it were all Porto Ricans, as appeared from the facts set out by them as complainants in the bill in suit No. 509, and that, so being Porto Ricans, they could not intervene in suit No. 524, as all of the respondents in that suit were also Porto Ricans, and thus there would be Porto Ricans on both sides of the case, which would oust the jurisdiction, under our decision in the Vallecillo y Mandry v. Bertran Case, 2 Porto Rico, Fed. Rep. 46.

To this contention, counsel for the intending interveners replied that, the intervention not being an original suit, but ancillary and dependent, that is, supplementary merely to the original bill, it could be maintained without reference to the citizenship of the parties, under the ruling of the Supreme Court of the United States in Freeman v. Howe, 24 How. 450, 16 L. ed. 749, and Krippendorf v. Hyde, 110 U. S. 276, 28 L. ed. 145, 4 Sup. Ct. Rep. 27, and Killian v. Ebbinghaus, 110 U. S. 568, 28 L. ed. 246, 4 Sup. Ct. Rep. 232.

We have read both of the original bills, as well as the intervening petition, with care, and have also read the exhibits filed as a basis for the right of action in each of the cases. It appears that, as long ago as 1862 to 1865, that is, about forty-five or more years ago, there lived in the northeast corner of the island of Porto Rico, at or near the town of Loiza, a man named Ramon Ruiz Gandia, who was in possession of a considerable estate, called "San José Cacique," and that the ancestors of both sets of complainants in these suits furnished him means to plant and gather his crops, particularly sugar cane to be manufactured at a mill he possessed. That José Rufino de Goenaga, the ancestor of complainants in suit No. 509, was the one that furnished

money to him in 1862 and the following year, and William Noble, the ancestor of complainants in suit No. 524, furnished him money in 1865.

It is alleged that he did not pay off these debts, although public instruments were drawn up in each case to secure them on the crops of these years. It is possible even that one of the instruments is so worded as that it might be held to be a mortgage upon the lands also, but this is not certain. These instruments were duly recorded in the old anotaduría of that period. However, Gandia, as it is alleged, remained owing Noble $8,093, and Goenaga $6,063.36. It is also alleged that some time thereafter, the year not being fixed save that it was in the sixties, this man Gandia became and was declared a bankrupt, and that, after the bankruptcy proceeding was settled, one Ricardo Gallardo, the ancestor of the respondents in both of these suits (who was Gandia's partner in the plantation), acquired title to the same, but subject to the liens of Noble and Goenaga, as aforesaid.

It is further alleged that Gallardo, in the year 1882, obtained from the proper court an expediente posesorio to the whole of this plantation, but that, when the court granted it to him, it required him to recognize these liens as valid, and to agree to pay them.

It is further alleged that respondents in both of these present suits are the heirs of said Gallardo, and that they are still in possession of the property. It is also stated that a year later, in 1883, Gallardo executed a further notarial instrument, by which he recognized the validity of this indebtedness and the liens thereunder upon said plantation; but such exhibit was not filed with the bills.

Succession of De Goenaga v. Succession of Gallardo.

The record of these alleged liens, and presumably these al-leged acknowledgments of them, was thus left in the old registry, and not transferred to the new registry until April, 1906, or but a short time before the filing of these suits, and the transfer was thus made probably only to give complainants the right to file the suits.

The effort here is to have these liens established judicially and the amount of each ascertained with interest and costs, and to obtain decrees against the Gallardo heirs and against the land in question therefor; and if the same are not paid, to cause said plantation to be sold, to satisfy the debts respectively. The debts, if valid, would now with interest amount to quite large sums, but the view we take of the matter renders it unnecessary to do any calculating in that regard.

The briefs on both sides are quite able, and are, no doubt, the result of a considerable search in the law as to laches generally and the different statutes of limitation known to Spanish law, both under the old and new Code. We do not, however, think it necessary to determine what particular statute of limitation applies, or whether it is the five-year, the ten-year, the twenty-year, or the thirty-year statute, if either, that has barred the claims, or whether the running of either one or more of these statutes has been interrupted by the so-called acknowledgment of the debts said to have been made in the years 1882–3.

After examining the instruments given in the first instance, in 1862, 1864, and 1865, we have grave doubts whether they could, in any event, be held to apply to anything save the crops.

It is our opinion that it would be hard to find a case showing such gross and apparently inexcusable laches in the collection of debts, or in the assertion of liens against property, as is exhibited

in these two cases. Both of the men, Noble and Goenaga, presumably lived in the community here for several years after these so-called refacción debts became due, and did nothing to collect them, or foreclose these so-called liens. It is not even alleged that they, or either of them, were present at the time of the obtaining of the expediente posesorio regarding the land by Gallardo, and so it may have been the mere formal action of the court itself to make him recognize these liens in 1882. But even this so-called recognition of the debts took place when the alleged debts were already from sixteen to eighteen years overdue.

But this is not all, because it appears that, from 1882 to 1898, an additional period of sixteen years, Noble or his heirs, and Goenaga or his heirs, or some of both, undoubtedly remained right here in the same community, and did nothing to collect these debts, if they were, in fact, still due.

Further than this, the heirs waited thereafter, under American occupation eight years more, until 1906, before they even caused the old record of these alleged liens to be transferred to the new registry.

Can a grosser case of negligence, or a greater example of lack of diligence, be imagined? Yet there is not a single allegation in either of the bills offering the least excuse for it.

Once before we had occasion to point out that courts of equity lend their aid only to the diligent, and will not relieve anyone guilty of gross laches and delay. See Llaneras y Quintana v. La Compañia Ferrea del Oeste, 3 Porto Rico Fed. Rep. 83, 84. See also our opinion in Dexter v. Maria Cruz De Godinez, 4 Porto Rico Fed. Rep. 181.

Statutes of limitation are not necessarily followed by courts

of equity, because there can be laches even within a lengthy statute of limitation. Such laws are made for repose, and not to command courts of equity to grant relief to every person who may ask it within the utmost limit of the longest statute. "Conscience, good faith, and reasonable diligence alone call into action the powers of a court of equity. McKnight v. Tyler, 1 How. 161, 11 L. ed. 86." "It is an established rule with courts of equity, independent of any statute of limitation, that they will not entertain stale demands. Hume v. Beale (Crosby v. Beale), 17 Wall. 336, 21 L. ed. 602; Patterson v. Hewitt, 195 U. S. 309, 49 L. ed. 214, 25 Sup. Ct. Rep. 35."

We need not cite further authorities. A reading of our opinion, and the cases there cited, in the Llaneras y Quintana Case, supra, and a reading of the opinion of the Supreme Court of the United States in Patterson v. Hewitt, supra, where the subject receives elaborate consideration, will, we think, convince anyone that this court ought not to lend its aid to these complainants.

We are not admitting that some or all of the statutes of limitation in force in Porto Rico since these alleged debts became due have not, in fact, barred the claims, because we do not think it is necessary to so hold; we are only showing that, independent of any statute, the demands are too stale, considering their character, to induce a court of equity to permit a recovery thereunder.

As stated, complainants make no showing as to why nothing was done in the way of asserting their rights through this nearly half a century of time, and, in our opinion, it is too late now, when the lands in question have no doubt become valuable sugar plantations under the American government. To permit

such stale demands as these are to be recovered upon would be to put a premium on gross laches and delay. Any delay such as this is can rarely, if ever, be excused, and certainly not where most or all of the parties interested were present in the jurisdiction all of the time. It may be said that at times there were many infants involved in these cases; but even so, there were also several adults always in existence, who could have asserted their rights, and foreclosed the liens, and collected the debts, if any in fact existed.

It will be seen that the point upon which the decision in these cases turns is simply that of staleness of demand. Therefore we do not wish to be understood as definitely passing upon the legal effect of a contrato de refacción. Indeed, a short examination shows us that the word "refacción," according to Escriche, had an entirely different meaning in ancient legal Spanish from what counsel are claiming for it on this island. However, we will not enlarge upon that subject.

All lawyers understand that the reason for the enactment of statutes of limitation is to secure repose. After the lapse of a long period of time it is much harder to defend against stale demands,—witnesses may have died, records may have been lost, and many other things may have occurred which would destroy what, at an earlier date, would have been a perfect defense,— and hence the policy of the law, certainly in equity, is against such recovery save in rare and exceptional cases.

A court of equity is a new tribunal in Porto Rico, and, in our opinion, one of the greatest blessings it can confer is to discountenance unreasonably stale demands, and this even within the local statutes of limitation. It should be slow to lend its aid to complainants who neither show diligence nor excuse its absence.

Succession of De Goenaga v. Succession of Gallardo.

When a country changes its sovereignty, notwithstanding that most of the laws of the former government usually remain in force, still many new rules, laws, and policies inseparable from the new sovereignty, come into being, and we think that this policy of courts of equity which we are discussing is one of them. Some of the civil-law statutes of limitation, especially regarding real estate, are, in our opinion, unreasonably long as compared with the statutes that obtain in most of the states of the Union, but to shorten them is, of course, for Congress or the local assembly, and not for the courts. However, as we have shown, courts of equity are not necessarily bound by such statutes, but have discretion in that regard, and they ought not, in our opinion, to resolve doubts in favor of claims and demands that should have been settled half a century ago. We do not think it would comport with the purposes of a court of equity to enforce in 1909 what may have been but a mere chattel mortgage or its equivalent in 1862.

Therefore the petition for the right to intervene in suit No. 524 will be denied, and the suit itself will be dismissed; also suit No. 509 will in like manner be dismissed, if the same has not already been done, and orders to that effect will be entered with costs in each case against those asking affirmative relief.