**In re LIVEMERCIAL AVIATION HOLDING, LLC, Debtor.**

**Daniel L. Freeland, Plaintiff,**

**v.**

**CPA Warehouse and Johnny Mathis, Defendants.**

**Bankruptcy No. 10–20051.**
**Adversary No. 12–2168 JPK.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Signed March 26, 2014.

Frederick L. Carpenter, Highland, IN, for Plaintiff.

George P. Galanos, Crown Point, IN, for Defendants.

*MEMORANDUM AND ORDER OF FINAL DETERMINATION OF THE DEFENDANTS' MOTION TO DISMISS*

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This Adversary Proceeding was initiated by a complaint filed by Daniel L. Freeland, Trustee of the Chapter 7 bankruptcy estate of Livemercial Aviation Holding, LLC [Livemercial] (Freeland hereinafter, "Trustee"), on August 31, 2012. An amended complaint was filed on September 18, 2012. On October 14, 2012, the defendants CPA Warehouse ("CPA") and

Johnny Mathis ("Mathis") filed a motion to dismiss the amended complaint. The motion to dismiss states three separate bases upon which the defendants assert that the Trustee's amended complaint should be dismissed. In its Order of Partial Determination of Motion to Dismiss/Order for Hearing entered as Record No. 18 on March 20, 2013, the court determined two of the three grounds asserted by the defendants adversely to the defendants. In that order the court determined that further proceedings were necessary with respect to the third ground—the contention that this adversary proceeding was not commenced timely under the provisions of 11 U.S.C. § 546(a). The court deemed this assertion to be one under Fed. R.Bankr.P. 7012(b)/Fed.R.Civ.P. 12(b)(6). This Memorandum will finally determine all grounds advanced by Mathis and CPA in their motion to dismiss.[1]

■ The court determines that it has subject matter jurisdiction with respect to all matters in relation to this adversary proceeding, and that it has complete statutory and constitutional authority to enter any and all orders and judgments as final determinations by the United States Bankruptcy Court. The matters asserted by this adversary proceeding are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(H).

The focus of the amended complaint is recovery by the Trustee, for the benefit of the Chapter 7 bankruptcy estate of Livemercial, of property in the amount of $990,000.00, the value of a transfer alleged by the Trustee to have been made on or about June 9, 2009, by Livemercial to one or both of the defendants.

The amended complaint is ambiguous as to the legal theories which it asserts.

Paragraph 7 refers to 11 U.S.C. § 542 and 11 U.S.C. § 548. The portions of the complaint stated in paragraphs 10 through 19 appear under a subheading which states: *"Action to Avoid Fraudulent Transfer 11 U.S.C. § 548 and I.C. 32–18–2."* Paragraph 16 asserts that "the Defendants received an *avoidable preferential transfer* ..." (emphasis supplied). Paragraph 19 states:

That pursuant to 11 U.S.C. § 542, the $990,000 is an asset of Debtor's Estate and that the Defendants are required to turnover said amounts to Plaintiff.

The prayer for relief has 5 enumerated provisions. Paragraph 1 requests a money judgment "avoiding the preferential transfers of $990,000". Paragraph 2 requests a money judgment against the defendants "under Section 548 and Ind.Code § 32–18–2–15."

From the foregoing, it's possible to postulate that the amended complaint asserts four possible grounds for relief: (1) 11 U.S.C. § 548; (2) I.C. 32–18–2–15 [I.C. 32–18–2 *et seq.* ]; (3) 11 U.S.C. § 547 (preferential transfer); and (4) 11 U.S.C. § 542 in relation to perhaps a theory that the $990,000.00 at all times remained property of the debtor, now being in the possession of another person or entity—as contrasted to "transfer" of ownership.

The parties' briefs are directed solely to actions concerning fraudulent conveyance. The "Trustee's Response and Memorandum in Opposition to Motion to Dismiss" states: "Plaintiff's Amended Complaint seeks to avoid a fraudulent transfer pursuant to 11 U.S.C. § 548 and Ind.Code § 32–18–2 *et seq.*" (second full paragraph, page 2). From the foregoing, the court construes the amended complaint to assert actions only under 11 U.S.C. § 548 and

---

1. The aggregation of all grounds in this one final composite order necessarily results in redundancies with prior orders which partially determined certain issues.

I.C. 32–18–2 *et seq.* No action is asserted under 11 U.S.C. § 547, and no claim is made that the $990,000.00 is property of the debtor held by another.

The parties did not differentiate the statutory basis for a state law fraudulent conveyance action from an action under 11 U.S.C. § 548. The basis for the former is 11 U.S.C. § 544, not 11 U.S.C. § 548. However, 11 U.S.C. § 546(a) applies to actions under 11 U.S.C. § 544, 11 U.S.C. § 547 and 11 U.S.C. § 548. We thus proceed with respect to an amended complaint which claims relief under 11 U.S.C. § 548 and 11 U.S.C. § 544/I.C. 32–18–2 *et seq.*

The Motion to Dismiss asserts that the amended complaint should be dismissed on three separate grounds:

1. The court lacks subject matter jurisdiction over the adversary proceeding because the Trustee failed to adequately state the basis upon which the court's jurisdiction is premised in the pleadings which he has filed in this case. The motion to dismiss and its accompanying memoranda essentially seek to characterize this alleged failure as precluding subject matter jurisdiction by the court. Thus, the court will deem this motion to have been filed pursuant to Fed.R.Bankr.P. 7012(b)/ Fed.R.Civ.P. 12(b)(1).

2. CPA and Mathis assert that the amended complaint fails to plead allegations of fraudulent conduct with the specification required by applicable pleading rules. This issue is addressed by the defendants under Fed.R.Bankr.P. 7012(b)/ Fed.R.Civ.P. 12(b)(6).

3. CPA and Mathis assert that this action by the Trustee is barred by the limitation provisions of 11 U.S.C. § 546(a). Pursuant to Fed.R.Bankr.P. 7008(a), the provisions of Fed.R.Civ.P. Rule 8 apply in adversary proceedings. Fed.R.Civ.P. 8(c)(1) includes the defense of "statute of limitations" as an affirmative defense. The court deems this affirmative defense to be within the scope of grounds which may be asserted under Fed.R.Bankr.P. 7012(b)/Fed.R.Civ.P. 12(b)(6), and this assertion will be so considered.

First, with respect to lack of subject matter jurisdiction, the court determines that the amended complaint sufficiently complies with applicable rules concerning pleading of the basis for the court's jurisdiction. Even if it did not do so, the failure to specifically assert grounds for the court's jurisdiction would not deprive the court of subject matter jurisdiction, but rather would be more in the nature of a Rule 12(b)(6) motion to dismiss, in response to which the court would allow the plaintiff to file an amended complaint which asserted the necessary jurisdictional basis. The court determines that this basis for asserted dismissal of the adversary proceeding is denied.

With respect to pleading of sufficient "facts" with particularity in relation to 11 U.S.C. § 548 and I.C. § 32–18–2 et seq., the court determines that paragraphs 9, 11, 12, 13 and 14 of the amended complaint are sufficient to satisfy the requirements of Fed.R.Bankr.P. 7008(a)/Fed.R.Civ.P. 8(a) and of Fed.R.Bankr.P. 7009/ Fed.R.Civ.P. 9(b). The court determines that the asserted basis for dismissal of the complaint on this ground is denied.

CPA and Mathis assert that the Trustee's action is time barred under the provisions of 11 U.S.C. § 546(a) which states:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

   (1) the later of—

     (A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

The Trustee contends that the action was timely filed under the provisions of the foregoing statute.

In order to set the stage upon which the Court's decision will play out, the record establishes the following "time line" as to pertinent proceedings in relation to the Motion to Dismiss:

1) The Bankruptcy Case of Livemercial Aviation Holding, LLC was filed as a voluntary Chapter 11 case by petition filed on January 11, 2010.

2) The Chapter 11 Case was converted to a Case Under Chapter 7 by the Record No. 123 Order entered on February 23, 2011.

3) The initial § 341 meeting with respect to the Chapter 7 case of the debtor was set for March 18, 2011, and was noticed to creditors by Record No. 124 entered on February 23, 2011. In the Record No. 124 document, Daniel L. Freeland was designated as the interim trustee pursuant to 11 U.S.C. § 701(a)(1).[2]

4) As evidenced by the record entry between Docket Record Entries Nos. 133 and 134, the Trustee continued the § 341 meeting to May 17, 2011.

5) As Record Entry No. 137 filed on June 7, 2011, the Trustee filed a Motion to Compel the Debtor to attend the § 341 meeting. In that document, the Trustee continued the § 341 meeting to June 21, 2011.

6) By its Record No. 140 Order, the Court ordered the Debtor Livemercial to appear at the June 21, 2011, § 341 meeting. The Record No. 140 Order also stated that in the event the Debtor failed to comply with respect to the required appearance at the June 21, 2011 § 341 meeting, a hearing would be held on August 12, 2011 to show cause why contempt should not be determined with respect to that failure.

7) By Record No. 146, Livemercial's principal Johnny Mathis was ordered to appear at the August 30, 2011, § 341 meeting, and it was ordered that if he didn't, a show cause hearing would be held on September 9, 2011.

8) As established by the Record Entry between Record Entries Nos. 150 and 151, a show cause hearing was held on September 9, 2011. Attorney Frederick Carpenter, acting on behalf of the Chapter 7 Trustee, appeared at that hearing and stated that Livemercial's principal Johnny Mathis had appeared at the § 341 meeting held on August 30, 2011 as required, and that the show cause should be deemed satisfied—which the court in fact ordered.

9) As Record No. 150, filed on August 30, 2011 (the same date as the § 341 meeting described above), the Trustee filed his Trustee's Notice of Request for Turnover at § 341 Meeting. This document requested turnover to the

---

**2.** In their filings in support of their motion to dismiss, CPA and Mathis assert that there is nothing which establishes Freeland's appointment as an interim trustee. That is inaccurate. In the United States Bankruptcy Court for the Northern District of Indiana, the designation of the interim trustee in a Chapter 7 case is made in the initial notice to creditors concerning the § 341 meeting and other matters noticed to creditors at the initiation of the case. Freeland was appointed as the interim trustee by the Record No. 124 document.

Trustee of certain documents deemed to be necessary to the Trustee for administration of the case as a result of the § 341 meeting held on August 30, 2011.

10) At the § 341 meeting held on August 30, 2011, the Trustee extensively questioned Johnny Mathis concerning matters related to Livemercial. In order to establish the substance of the August 30, 2011 § 341 meeting, the court requested the Trustee to file a transcript of the tape recording of that meeting transmitted to the office of the United States Trustee. In the memorandum filed by the Trustee as Record No. 31 on July 29, 2013, the Trustee attached a transcription done by his office with respect to that meeting. In that memorandum, the Trustee stated that the attached transcript was created by the staff of his office immediately following the August 30, 2011, § 341 meeting based upon the recording created at that meeting. The Trustee also stated that the recorded tape of that meeting had been damaged in the mail between the Chapter 7 Trustee's Office and the office of the United States Trustee, and was therefore unusable. The transcript of the August 30, 2011 meeting filed by the Trustee includes the following statement very near to the conclusion of the meeting:

*Trustee Freeland:* "I have no further questions. *I think I'll just hold this open, until I get those documents* [referenced immediately above this entry in the transcript] and if I need any-

thing after that, it's fine—if not I'll just close it at the 341 that I get it at.[3] (emphasis supplied).

11) Various proceedings concerning the Trustee's motions for turnover, and show cause hearings with respect to those motions, took place subsequent to August 30, 2011: Record Nos. 158 (Trustee's motion for turnover filed on January 31, 2012); 160 (the court's February 27, 2012 order granting the Record No. 158 motion); 162 (the Trustee's motion for a show cause hearing concerning the Record No. 160 order); 163 (the court's June 8, 2012 order setting a hearing on the Record No. 162 motion); 165 (hearing on the Record No. 162 motion, and resetting the hearing); and 167 (the docket entry concerning the August 10, 2012 hearing).[4]

12) On August 15, 2012, the hearing set by Record No. 165 was held, which resulted in the determination by the Court as stated in Record No. 167 that the debtor had satisfied the Trustee's Motion for Turnover and that the Show Cause had been satisfied.

13) As the Record Entry between Record entries No. 171 and 172—on October 9, 2012—the Trustee filed a document which generated the Record Entry of: "Statement Adjourning Meeting of Creditors, *as of 12/28/11* " (italics in original entry). In his legal memorandum, the Trustee states that this document was filed when it was brought to his attention by the United States Trustee that the § 341 meeting

---

**3.** Ideally, the tape recording of the August 30, 2011 § 341 meeting transmitted to the United States Trustee's office would have served as the basis for establishing the proceedings at that meeting. The court determines that the transcription attached to the Record No. 31 filing is accurate, and that it evidences a

general continuance of the August 31, 2011 § 341 meeting to an undesignated date and time.

**4.** These matters will be addressed in more detail *infra.*

in Case No. 10–20051 had never been closed on the record.

At a hearing held on February 7, 2014, attorneys Galanos (on behalf of the defendants) and Carpenter (on behalf of the plaintiff) agreed that the foregoing record is accurate and complete as to the actual proceedings in relation to the § 341 meeting of Livemercial.

The provisions of 11 U.S.C. § 546(a)(2) are not applicable in this case, because the case has not been closed or dismissed. As will be addressed below, the timeliness of Adversary Proceeding No. 12–2168 depends upon the provisions of 11 U.S.C. § 546(a)(1). Under the circumstances of this case, that provision provides that the complaint filing deadline is the later date in relation to "two years after the entry of the order for relief" and "one year after the appointment or election of the first Trustee under § 702".

The two year period provided by 11 U.S.C. § 546(a)(1)(A) expired on January 11, 2012. Upon the conversion of the Chapter 11 case to a case under Chapter 7 on February 23, 2011, Daniel L. Freeland was appointed as the interim Trustee in the Chapter 7 Case. As stated in Record No. 124, the initial § 341 meeting of creditors in the Chapter 7 case was scheduled for March 18, 2011. The time line stated previously in this memorandum states the course of proceedings in relation to the continuances of the § 341 meeting. Based upon that time line, the § 341 meeting was not concluded on August 30, 2011. Based upon the Record Entry between Record entries No. 171 and 172, entered on October 9, 2012, the § 341 meeting was *adjourned*—not concluded—as of December 28, 2011. As of January 11, 2012, the § 341 meeting had not been concluded.

A critical issue under 11 U.S.C. § 546(1)(B) is when Freeland became the permanent, as contrasted to the interim, Trustee in Livemercial's Chapter 7 case. 11 U.S.C. § 702(b)-(d) state:

(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if—

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

(d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

In the context of 11 U.S.C. § 546(a)(1), the issue distills down to when the Trustee was appointed or elected as a permanent Trustee in this case under 11 U.S.C. § 702. In turn, that issue concerns the application of 11 U.S.C. § 702(d) as to when Freeland ceased being an interim Trustee, so as to become the "permanent" Trustee. This inquiry, in turn, depends upon when the ability of creditors to elect a "permanent" Trustee ended under 11 U.S.C. § 702—as long as creditors were able to elect a "permanent" Trustee, an interim Trustee is not deemed to be a "permanent" Trustee. The record leads to only one conclusion: the § 341 meeting

was adjourned generally as of December 28, 2011.[5] Resultantly, Freeland had not been deemed to be the permanent Trustee as of December 28, 2011, or actually at any specific date stated affirmatively in the record.[6]

■ The timeliness of the filing of the amended complaint under 11 U.S.C. § 546(a)(1) is controlled by *In re Draiman*, 714 F.3d 462 (7th Cir.2013). In that case, the debtor's case was initiated as a voluntary Chapter 11 case on May 14, 2009, and was converted to a Chapter 7 case on May 13, 2011—one day before the expiration of the two year period stated in 11 U.S.C. § 546(a)(1)(A). Obviously, a permanent trustee was not appointed within that two year period. *Draiman* determined that the one year extension period stated in 11 U.S.C. § 546(a)(1)(B) applies only in a circumstance in which a permanent trustee is appointed within the two year period under 11 U.S.C. § 546(a)(1)(A). As applied to the instant case, Freeland did not become the permanent trustee within that two year period, and thus the amended complaint is untimely under the specific time frames of 11 U.S.C. § 546(a)(1).

■ But that is not the end of the inquiry. *In re Draiman* holds that the doctrine of equitable estoppel may be applied in appropriate circumstances to toll the 11 U.S.C. § 546(a)(1)(A) limitation period, an assertion made by the Trustee in his memorandum. As stated in *Draiman*:

> Furthermore, the statute of limitations in 11 U.S.C. § 546(a) is subject to equitable tolling. See, e.g., *Jackson v. Astrue*, 506 F.3d 1349, 1354–55 (11th Cir. 2007); *In re Pug [Pugh]*, 158 F.3d 530, 537 (11th Cir.1998); *In re M & L Business Machine Co.*, 75 F.3d 586, 591 (10th Cir.1996); *In re United Insurance Management, Inc.*, 14 F.3d 1380, 1384–85 (9th Cir.1994); cf. *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 345–50, 22 L.Ed. 636 (1874). *If without any laxity or other fault the creditors can't procure the appointment of a permanent trustee within the statutory deadline, the doctrine of equitable tolling would permit an extension.* Thus the statute can be read as written without prejudice to the rights of the legitimate creditors of a Chapter 11 bankrupt. 714 F.3d 462, 466.

(emphasis supplied).

---

**5.** Implicated in this inquiry is Fed.R.Bankr.P. 2003(e), and case law which has developed under that Rule as to when a Section 341 meeting is actually concluded. In the context of Fed.R.Bankr.P.2003(e), an issue is when the present version of that Rule became effective and applicable to cases, particularly in the context of the "presiding official" filing a "statement specifying the date and time to which the meeting is adjourned." In this context, the United States Supreme Court's order of April 26, 2011 [See introductory notes preceding Rule 1001 in the 2012 of *Bankruptcy Code, Rules and Forms by West Publishing Company*] provides that the amendments to Fed.R.Bankr.P.2003 took effect on December 1, 2011, and "shall govern in all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings then pending."

First, the court determines that it is not "just and practicable" to apply the amended rule to this case. Moreover, any issue concerning which version of Rule 2003(e) may be applicable is not material to any issue in this case, as the record conclusively demonstrates that the meeting *was in fact adjourned to an unspecified date* after the latest date within the 2 year period stated in 11 U.S.C. § 546(a)(1)(A).

**6.** Because the record is conclusive as to the § 341 not being concluded within the time frame of 11 U.S.C. § 546(a)(1)(A), it is unnecessary to address whether the original version of Fed.R.Bankr.P.2003(e) is to be construed pursuant to one of the three lines of case authority discussed in *In re Dutkiewicz*, 408 B.R. 103 (6th Cir.BAP, 2009).

The emphasized language establishes a very expansive application of the doctrine of equitable tolling to 11 U.S.C. § 346(a)(1), one which allows a Chapter 7 trustee in a case converted from Chapter 11 to undertake an effective investigation concerning possible recovery or avoidance actions without running afoul of 11 U.S.C. § 346(a)(1)(A).

The cases cited by *Draiman* address the general parameters of the principle of equitable tolling. In *In re M & L Business Machine Co.*, 75 F.3d 586, 591 (10th Cir. 1996), the following is stated:

> *Section 546(a)* is subject to the doctrine of equitable tolling. See id. at 1385 (noting that every court that has considered this issue has held that equitable tolling applies to *§ 546(a)(1)*). Equitable tolling will prevent § 546(a) from running when the trustee, despite the exercise of due diligence, is prevented from asserting a cause of action because she remains unaware of that cause of action due to fraud, *id.*, or when "extraordinary circumstances beyond plaintiff['s] control made it impossible to file claims on time," *Amazing Enters. v. Join (In re M & L Business Machs., Inc.)*, 153 B.R. 308, 311 (D.Colo.1993) (quotation omitted) (equitable tolling available while trustee appealed decision that she lacked standing to assert avoidance proceeding; initiation of avoidance action under those circumstances would have been waste of time). In this case, the trustee has specifically alleged that her investigation into the bankruptcy estate and any possible avoidance actions was severely hampered by debtor's misrepresentation of its assets and debts on its bankruptcy petition schedules, concealment of pertinent documents, and destruction of relevant records. The trustee further asserts that she was, for a period of time, unable to obtain key records which had been seized by the

Justice Department in connection with criminal charges filed against debtor's principals.

In *In re United Insurance Management, Inc.*, 14 F.3d 1380, 1384–85 (9th Cir.1994), the following was held:

> Under the equitable tolling doctrine, where a party "remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (internal quotation omitted). As a general rule, "[t]his equitable doctrine is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1945).
>
> Every court that has considered the issue has held that equitable tolling applies to *§ 546(a)(1)*. See *Amazing Enters. v. Jobin (In re M & L Business Machs., Inc.)*, 153 B.R. 308, 311 (D.Colo. 1993); *White v. Boston (In re White)*, 104 B.R. 951, 956–58 (S.D.Ind.1989); *Steege v. Lyons (In re Lyons)*, 130 B.R. 272, 279–81 (Bankr.N.D.Ill.1991); *McGoldrick v. McGoldrick (In re McGoldrick)*, 117 B.R. 554, 557–59 (Bankr.C.D.Cal.1990); *McColley v. Rosenberg (In re Candor Diamond Corp.)*, 76 B.R. 342, 350–51 (Bankr. S.D.N.Y.1987); *Martin v. Butcher (In re Butcher)*, 72 B.R. 247, 249–51 (Bankr. E.D.Tenn.1987); *Metzeler v. Bouchard Transp. Co. (In re Metzeler)*, 66 B.R. 977, 980–82 (Bankr.S.D.N.Y.1986). These cases follow the seminal decision of *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875), in which the

Supreme Court held that a bankruptcy trustee could pursue a fraudulent transfer action after expiration of the two-year limitations period in the Bankruptcy Act of 1867 because the trustee lacked knowledge of the cause of action before the period expired. *Id.* at 349–50.

The granddaddy of equitable tolling is *Bailey v. Glover*, 88 U.S.(21 Wall) 342, 22 L.Ed. 636 (1874). Following up on the principles of that decision, in *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 90 L.Ed. 743 (1946), the United States Supreme Court stated:

Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair. See *Russell v. Todd, supra*, 309 U.S. [280] at page 289, 60 S.Ct. [527] at page 532, 84 L.Ed. 754 [ (1940) ]. 'There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court.' *McKnight v. Taylor*, [42 U.S. 161] 1 How. 161, 168, 11 L.Ed. 86 [ (1900) ]. A federal court may not be bound by a State statute of limitation and yet that court may dismiss a suit where the plaintiffs' 'lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence.' *Benedict v. City of New York*, 250 U.S. 321, 328, 39 S.Ct. 476, 478, 63 L.Ed. 1005 [ (1919) ]. A suit in equity may fail though 'not barred by the act of limitations.' *McKnight v. Taylor, supra; Alsop v. Riker*, 155 U.S. 448, 15 S.Ct. 162, 39 L.Ed. 218 [ (1894) ].

Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that 'laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties.' *Galliher v. Cadwell*, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 [ (1892) ]; see *Southern facific [Pacific] Co. v. Bogert*, 250 U.S. 483, 488, 489, 39 S.Ct. 533, 535, 536, 63 L.Ed. 1099 [ (1919) ]. And so, a suit in equity may lie though a comparable cause of action at law would be barred. If want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time.

Equity will not lend itself to such fraud and historically has relieved from it. It bars a defendant from setting up such a fraudulent defense, as it interposes against other forms of fraud. And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' *Bailey v. Glover*, 21 Wall. 342, 348, 22 L.Ed. 636; and see *Exploration Co. v. United States*, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 [ (1918) ]; *Sherwood v. Sutton*, Fed.Cas.No. 12,782, 5 Mason 143.

This equitable doctrine is read into every federal statute of limitation. If the

Federal Farm Loan Act had an explicit statute of limitation for bringing suit under *s 16,* the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache which is the basis of this suit. *Bailey v. Glover, supra; Exploration Co. v. United States, supra; United States v. Diamond Coal Co.,* 255 U.S. 323, 333, 41 S.Ct. 335, 337, 65 L.Ed. 660 [ (1921) ]. It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the mitigating construction required by that doctrine.

■ The foregoing cases—especially coupled with the emphasized sentence cited above from *Draiman—make it clear that equitable tolling does not depend on an act of fraud, or negligent action, by a party against whom an action is asserted.* Rather, in the context of 11 U.S.C. § 546(a)(1), the invocation of the doctrine requires diligence by the trustee coupled with circumstances which hampered or precluded the trustee's obtaining information or documentation necessary to determine whether a recovery or an avoidance action can be asserted in accord with the requirements of Fed.R.Bankr.P 9011, followed by relatively prompt action to file an action.

■ The transcript of the section 341 conducted by the Trustee on August 30, 2011 discloses that the Trustee questioned Johnny Mathis [7] extensively about the transaction involving the alleged $990,000.00 transaction, but that Mathis did not provide clear answers as to that

transaction. A list of 10 documentary requests was complied at that meeting, some potentially significant in relation to the transaction. The following is the course of proceedings before the court by which the Trustee sought to complete his investigation.

1. *The record number 158 Motion for Turnover,* which states:

### MOTION FOR TURNOVER

Comes now Daniel L. Freeland. Trustee. and files his Motion for Turnover and in support thereof states:

1. That Debtor filed a Chapter 7 Bankruptcy Petition on 01/11/10 and Daniel L. Freeland is the duly appointed Trustee in bankruptcy in this matter.

2. That the Trustee is seeking turnover of the following documents from Debtor:

a. 2009 Federal and State tax returns with all attachments

b. General ledger(s), Balance Sheet(s) and/or income statements from 1/1/09 to current time

c. Any financial statements issued since 111/09

d. Account Number and Password for e*Trade account

e. Insurance policy on aircraft engines

f. PNC loan documents

g. All documents regarding any transfer of cash or other property to J. Mathas

h. Complete account number for closed account(s)

I. Mailing address for Greg Miracle

Warehouse.

---

7. Mathis is/was the principal of both the debtor Livemercial and of the defendant CPA

3. That the above requested items are property of the Estate and subject to turnover under 11 U.S.C. Section 542 and/or Section 543.

WHEREFORE, the Trustee prays for an Order from this Court requiring the Debtor to turnover to the Trustee the above mentioned documentation, and for all other just and proper relief.

2. *The court's record number 160 order on the number 158 motion,* which states:

### ORDER

This cause came to be heard on the Trustee's Motion for Turnover, all as contained in said Motion:

The Court, being duly advised in the premises, and finding that notice has been given to all parties in interest and no objections have been filed, does now GRAND said Motion.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Debtor, LIVEMERCIAL AVIATION HOLDING, L.C.C., turnover 2009 Federal and State tax returns with all attachments, general ledger(s), balance sheet(s) and/or income statements from 1/1/09 to current time, any financial statements issued since 1/1/09, account number and password for e*Trade account, insurance policy on aircraft engines, PNC loan documents, all documents regarding any transfers of cash or other property to J. Mathas, complete account number for closed account(s). Mailing address for Greg Miracle, on or before 30 days from the date of this Order.

SO ORDERED this 27th day of February, 2012.

3. *The Trustee's record number 162 Verified Motion For Order To Show Cause,* which states:

### VERIFIED MOTION FOR ORDER TO SHOW CAUSE

Comes now Daniel L. Freeland, Trustee, and moves the Court to issue an order requiring the principal of the Debtor, Johnny Mathis, to show cause why he should not be held in civil contempt for disobedience of this Court's Order of February 27, 2012, requiring the Debtor to produce documents to the Trustee, and in support thereof, would show the Court as follows:

1. That the Trustee filed a Motion for Turnover requiring the Debtor to produce numerous documents regarding the assets and financial history of the Debtor.

2. That an Order was entered by the Bankruptcy Court on February 27, 2012, which ordered the Debtor to produce said documents.

3. That the Debtor failed to produce said documents, and that by reason of its failure and refusal to comply with this Court's Order, it should be punished for its contemptuous conduct.

WHEREFORE, Trustee prays that the Court issue an order to show cause requiring the principal of the Debtor, Johnny Mathis, to show cause why he should not be held in contempt of this Court for disobedience of this Court's Order of February 27, 2012, and for all other orders deemed necessary under the circumstances.

4. *The court's record number 163 order in response to the number 162 motion,* which states:

### ORDER FOR HEARING/ORDER TO APPEAR

On May 30, 2012, the Chapter 7 Trustee filed (as record # 162) a "Verified Motion for Order to Show Cause", requesting the court enter an

order requiring the debtor's principal, Johnny Mathis, to show cause why he should not be held in contempt for failure to comply with the court's order entered on February 27, 2012 as record # 160, which required the debtor to turnover certain documentation to the Trustee. Although perhaps implicit, that order did not specifically direct Johnny Mathis to comply with the order. However, Johnny Mathis is in fact the principal of the debtor corporation.

IT IS ORDERED as follows:

1. A hearing will be held on July 6, 2012, at 9:00 A.M. to address the record # 162 verified motion for order to show cause.

2. Johnny Mathis shall personally appear at the foregoing hearing to address the manner in which the debtor, through him, will comply with the court's record # 160 order.

Dated at Hammond, Indiana on June 8, 2012.

5. *The record number 165 docket entry concerning the July 6, 2012 hearing,* which states:

Docket Entry as to hearing held 7/6/12 (related document(s)160 Order on Motion for Turnover of Property 162 Motion for Contempt filed by Daniel L. Freeland. APPEARANCES: Atty. Galanos appears on behalf of debtor, Johnny Mathis appears, and Atty. Carpenter appears on behalf of the Trustee. The parties address compliance with the record # 160 turnover order, including Mr. Mathis' explanation of difficulties retrieving files from a software program. The hearing is continued to review compliance. The foregoing matter is hereby continued to August 10, 2012, at 9:00 a.m. SO ORDERED.

6. *The court's record number 167 docket entry concerning the August 10, 2012 hearing,* which states:

Docket Entry: Hearing held on 8/10/12 RE:(related document(s) 162 Motion for Contempt filed by Daniel L. Freeland. APPEARANCES: Johnny Mathis and Atty. Galanos on behalf of Debtor. The debtor has complied with the trustee's motion for turnover; matter thus resolved—order to show cause satisfied.

The foregoing record amply demonstrates the diligent efforts employed by the Trustee to obtain information and documentation (first requested at the August 30, 2011, § 341 meeting)—a significant portion of which is material to the issues raised in the adversary proceeding, and was necessary to the Trustee to obtain to investigate the transaction which is the subject of this case. As the Record Nos. 166 and 167 docket entries evidence, this course was completed by the Trustee sometime after July 6, 2012 and before August 10, 2012.[8] The complaint in this adversary proceeding was filed on August 31, 2012.

---

8. Based upon the record, including the proceedings at the August 30, 2011, § 341 meeting and the adjournment of the December 28, 2011 meeting, the court determines that the § 341 meeting of Livemercial was concluded when the Trustee received the documents/information originally requested at the August 30, 2011, meeting. This resolution was stated on the record at the August 10, 2012 hearing, memorialized by record entry number 167.

The court thus concludes that Daniel L. Freeland became the permanent trustee in case number 10–20051 on August 10, 2012. To the extent necessary to do so, the court adopts the "totality of circumstances" test as discussed in *In re Dutkiewicz,* 408 B.R. 103 (6th Cir. BAP 2009) to arrive at this determination. A separate order in this regard will be entered.

In order to apply the doctrine of equitable tolling, it need not be demonstrated that any failure to disclose documents or information was the result of some form of fraudulent conduct, and the court does not find that there was fraudulent failure to disclose information to the Trustee. What is made abundantly clear by the record—particularly the transcript of the August 30, 2011, § 341 meeting—is that Johnny Mathis was for all intents and purposes the Debtor Livemercial, and that he was for all intents and purposes a number of other entities with respect to which the Trustee conducted investigation, including the Defendant CPA Warehouse. The Trustee's inability, despite due diligence, to obtain information/documentation highly material to the core of this case—for whatever reason caused Mathis' inability or failure to promptly produce or provide it—amply supports the application of the doctrine of equitable tolling to this case in order to extend the limitation period of 11 U.S.C. § 546(a)(1)(A), with respect to both Mathis and CPA Warehouse. The filing of the complaint on August 31, 2012, is within this expanded period, and thus was timely.

For the reasons addressed above, the court determines that the motion to dismiss is denied with respect to its assertions of untimeliness under 11 U.S.C. § 546(a)(1).

IT IS ORDERED that the motion to dismiss filed by the defendants Johnny Mathis and CPA Warehouse on October 14, 2012, is denied.[9]

9. A preliminary pretrial conference will be scheduled by separate order.